**Pamela WRZESKI, in her representative capacity as a member of the City of Madison Common Council and individually as a voting resident of District 2, City of Madison, Plaintiff,**

v.

**CITY OF MADISON, WISCONSIN, and Joel Skornicka in his official capacity as Presiding Officer of the City of Madison Common Council, Defendants.**

No. 83–C–96–C.

United States District Court, W.D. Wisconsin.

March 8, 1983.

plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and under Article IV of the Wisconsin state constitution.

Presently before the court is plaintiff's motion for a preliminary injunction, on which a hearing was held on February 1, 1983. Plaintiff contends that her First Amendment rights as a member of the City of Madison Common Council are abridged unconstitutionally by a Madison city ordinance subjecting her to censure and fines if she chooses to abstain from voting on any question put before the Common Council.

For the purpose only of deciding this motion, I find the following facts from the record.

## FACTS

Plaintiff is a duly elected member of the City of Madison Common Council, a municipal governing body. She began service on the council in April, 1979. On September 21, 1982, the Common Council adopted an ordinance published as Section 2.15 of the General Ordinances of the City of Madison and providing as follows:

2.15 EVERY MEMBER TO VOTE.

(1) Every member present, when a question is put, shall vote, unless the presiding officer of the Council shall, for special reasons, excuse that member.

(2) In the event that a member refuses to vote on a question put to the Common Council, the presiding officer shall remind the member of the obligation to vote and, if the member persists in refusing to vote on the question after such reminder, the presiding officer shall censure the member and direct the clerk to record the censure in the minutes.

(3) If a member, after having been censured pursuant to Section 2.15(1), shall again within the same term of office refuse to vote on any question put to the Common Council, the presiding officer shall order that the member forfeit the sum of one hundred dollars ($100.00) which the member shall pay then and there to the City Clerk.

Jeffrey M. Gallagher and Thomas M. Pyper, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for plaintiff.

Henry A. Gempeler, City Atty., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This is an action for declaratory and injunctive relief alleging the violation of

(4) If any member fails to pay the forfeiture imposed under Section 2.15(2) the Comptroller is hereby directed to withhold the forfeiture from the salary of the member. All forfeitures collected under this ordinance shall be paid into the general fund.

The definition of "to vote," as required by this section, is limited to the saying of "aye" or "no." [1] Plaintiff voted against passage and enactment of this ordinance.

The Common Council provides a procedure for members to explain their votes. Section 2.22 of the General Ordinances reads,

MEMBERS MAY FILE PROTESTS AGAINST COUNCIL ACTION. Any member shall have the right to have the reasons for his dissent from or protest against, any action of the Common Council entered on the minutes.

On January 18, 1983, a question was put before the council for voting on whether the City of Madison should appeal a decision made by the city Welfare Appeals Committee requiring the city to pay for a sex change operation for a certain Madison resident. During the roll call vote on the question, defendant Skornicka called plaintiff's name two times. At neither time did plaintiff vote "aye" or "no." [2]

Pursuant to Section 2.15(2) of the General Ordinances, defendant Skornicka directed the clerk to record a censure of plaintiff in the minutes. The fact that plaintiff was censured was subsequently reported in at least two Madison newspapers. If, during her term of office, plaintiff should again refuse to vote on a question before the council, she will be subject to forfeiture of one hundred dollars, pursuant to Section 2.15(3) of the General Ordinances.

## OPINION

The issuance of a preliminary injunction is governed by four factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*O'Connor v. Board of Education of School District No. 23,* 645 F.2d 578, 580 (7th Cir.), cert. denied 454 U.S. 1085, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). I turn first to plaintiff's likelihood of success on the merits.

Plaintiff contends that her right of freedom of speech is infringed by the requirement that she vote "aye" or "no" on every question put before the council.

At first blush, it appears inappropriate that this court should even be entertaining a suit challenging the constitutionality of a procedural rule adopted by a city council as a means of expediting the conduct of council business. It seems incongruous both that a federal court should be involving itself in the internal workings of a legislative body and that a person elected to represent a constituent group should be seeking judicial approval of her choice not to record a vote on an issue of importance to the citizens she represents.

■ As incongruous as it may appear, this is a case properly brought under the

---

**1.** *See* General Ordinances, Section 2.14:

FORM OF QUESTION. All questions shall be put in this form: "As many are of the opinion (as the case may be) say Aye; contrary No"; and in doubtful cases, the presiding officer may direct, or any member may call for, a division.

*See also* General Ordinances, Section 2.16:

AYE AND NO VOTE. The ayes and noes shall be taken and recorded upon any ques-

tions before the Council, upon the call of any two members. While the Clerk is calling the ayes and noes, the members shall vote from seat, and it shall not be in order for any member to explain his vote during the calling of the ayes and noes.

**2.** Plaintiff states that she was unable to reach a decision on the issue because insufficient information was available.

First Amendment of the United States Constitution. Plaintiff's status as a legislator does not strip her of any rights she would otherwise enjoy under the First Amendment to speak freely or not to speak at all. She has raised a federal question of which this court has jurisdiction. 28 U.S.C. §§ 1331 and 1343(3).

▮ Plaintiff is challenging government action which regulates speech according to its content. Though council members may choose to express assent or disagreement, they are required by Section 2.15 to express one or the other whenever a question has been properly put to them. This is not an example of a government regulation which regulates speech indirectly and without regard to content, for instance by restricting activities through which speech may be conveyed. *See, e.g., Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (ordinance prohibiting distribution of leaflets). Because the ordinance in question exercises direct control over the content of expression, a strict degree of scrutiny is mandated in evaluating its constitutionality. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972).

The alleged First Amendment violation in this case arises through government action which compels certain speech rather than prohibiting it. Plaintiff claims the right not to vote. Though prohibitions of speech are the more frequent subjects of First Amendment challenges, it is well established that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). *See also Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

Because the challenged ordinance aims directly at speech content, it can be justified only if it furthers a compelling government interest and is closely drawn to advance that interest.[3] *Elrod v. Burns,* 427 U.S. 347, 362-3, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). The burden to demonstrate this justification rests on defendants, *id.,* and in this case it appears unlikely that they will be able to meet it.

▮ Before proceeding further, it is necessary to address defendants' general argument that Section 2.15 deserves special deference as an exercise of the council's power to determine its own procedural rules. The fact that this regulation was enacted by a legislative body to govern its proceedings is irrelevant to the selection of the First Amendment standard to be applied. Legislators enjoy the same First Amendment protections as any other members of our society. *Bond v. Floyd,* 385 U.S. 116, 132-33, 87 S.Ct. 339, 347, 17 L.Ed.2d 235 (1966) (rejecting argument that speech which would be protected on part of private citizen could be used to disqualify state legislator). Courts have repeatedly analyzed freedom of speech cases in the legislative context without the use of any special First Amendment standard. *See, e.g., Princeton Education Association v. Princeton Board of Education,* 480 F.Supp. 962 (S.D.Oh.1979); *Gewertz v. Jackman,* 467 F.Supp. 1047 (D.N.J.1979); *Kucinich v. Forbes,* 432 F.Supp. 1101 (N.D.Oh.1977); *Ammond v. McGahn,* 390 F.Supp. 655 (D.N.J.1975), *rev'd on other grounds,* 532 F.2d 325 (3d Cir. 1976).

▮ However, the council's need to structure its proceedings in an orderly fashion is an appropriate consideration in applying

---

**3.** Defendants have not claimed that the proper test for this regulation is the clear and present danger test, the obscenity test, or any other of the narrow categorical exceptions developed by the courts for government action which restricts certain specific types of speech on the basis of content.

the "compelling government interest" test to the facts of this case. The effective functioning of government bodies can itself be a "compelling government interest." Speech that substantially hinders the functioning of the state may be subject to restriction on that basis. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Tinker v. Des Moines School District,* 393 U.S. 503, 513–14, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969).

■ Content-based regulations that further the efficient functioning of a legislative body and are closely drawn to serve that end may be permissible under the First Amendment. Legislative bodies may confine their meetings to specified subject matter. *City of Madison Joint School District No. 8 v. Wisconsin Employment Relations Commission,* 429 U.S. 167, 175 n. 8, 97 S.Ct. 421, 426 n. 8, 50 L.Ed.2d 376 (1976); *see also Princeton Education Association v. Princeton Board of Education,* 480 F.Supp. at 968. Legislators may be prevented from verbally disrupting proceedings, *see Kucinich v. Forbes,* 432 F.Supp. at 1114 n. 18, or from unduly delaying the proceedings with their speech, *see Parker v. Merlino,* 646 F.2d 848 (3d Cir.1981). Furthermore, it appears to be permissible for a legislative body to require during voting that assent be expressed as "aye" and dissent as "no," as in Section 2.16 of the Madison General Ordinances. Other forms of expression during that period could unreasonably protract the vote or lead to ambiguity as to whether a given legislator had voted for or against the measure, thus hindering the counting of votes necessary to the efficient functioning of a representative body.

What defendants have not shown in this case, and what it seems unlikely that they will be able to show, is that an affirmative requirement that all legislators *must* vote "aye" or "no" tends to further the effective operation of the Common Council. The council operates by the so-called "rule of twelve": a motion or question before the body is passed if twelve members vote in favor of it, regardless of whether the other ten members vote for or against it.[4] Indeed, as long as there is a quorum of fifteen to permit business to proceed, twelve council members in favor of a given proposition can obtain passage *without any action whatsoever* by the other ten. By not voting, a council member does not prevent the body from functioning, as she might, for example, if by not voting she was not counted as a part of the quorum. *See United States v. Ballin,* 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321 (1892) (upholding rule that nonvoting members of House of Representatives may be counted toward quorum to do business). Rather, the abstaining member simply does not aid the passage of the measure under consideration. If not aiding the passage of a given measure is equivalent to hampering the functioning of the body, then one would expect the Common Council to mandate that council members always vote "aye."

Permitting members to abstain is not functionally different from permitting them to vote no. When enough members abstain from voting on an issue, the measure will fail for lack of an affirmative vote by the majority of the body. The council may then proceed to the next order of business, as in any circumstance where a measure is defeated.

There can be no doubt that a representative who consistently dodges difficult or controversial issues by not voting on them does a disservice to his or her constituency. However, in our government system, the proper remedy for such behavior lies with the electorate. "A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.'" *Powell v. McCormack,* 395 U.S. 486, 547, 89 S.Ct. 1944, 1977, 23 L.Ed.2d 491 (1969).

---

**4.** Section 2.18 of the General Ordinances reads: MAJORITY VOTE OF ALL MEMBERS REQUIRED. All laws, ordinances, rules, resolutions and motions shall be passed by an affirmative vote of a majority of all the members of the Common Council unless an extraordinary vote is required by law.

The fact that the Common Council provides a procedure whereby members may explain their votes for the record, General Ordinances Section 2.22, does not affect the constitutionality of the section under consideration here. The availability of "alternate means" of expression is in no way controlling where the issue is a content-based prohibition of speech. *Spence v. Washington,* 418 U.S. 405, 411, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 757 n. 15, 96 S.Ct. 1817, 1823 n. 15, 48 L.Ed.2d 346 (1976); *Schneider v. State,* 308 U.S. at 163, 60 S.Ct. at 151. The same principle applies where the government attempts to compel, rather than prevent, speech. *See, e.g., Wooley v. Maynard,* 430 U.S. at 722, 97 S.Ct. at 1439 (Rehnquist, J., dissenting) (arguing appellees could display a conspicuous bumper sticker explaining their violent disagreement with license-plate motto "Live Free or Die"; this argument implicitly rejected by majority in overturning state license-plate motto requirement).

Since I find that it is unlikely that defendants will be able to show that the challenged regulation furthers a compelling government interest, I need not examine the question of whether the regulation is "narrowly drawn" to that interest. Similarly, because I conclude on the basis of the above discussion that plaintiff has a reasonable likelihood of success on the merits of her free speech claim, there is no need to address her due process and pendent state constitutional claims.

Turning to the remaining three components of the preliminary injunction inquiry, I find that plaintiff will be irreparably harmed by the chilling effect of Section 2.15 as she considers how—and whether—to vote on questions coming before the Common Council. *See Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. at 2689 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). A preliminary injunction would cause no substantial harm to defendants, inasmuch as they would remain fully able to conduct their legislative business, and therefore, the chilling effect on plaintiff's voting patterns outweighs the harm an injunction would inflict on defendants. Finally, I find that the granting of a preliminary injunction in this case would not disserve the public interest.

## ORDER

IT IS ORDERED that plaintiff's motion for a preliminary injunction is GRANTED, without costs. IT IS FURTHER ORDERED that defendants are hereby enjoined from enforcing Section 2.15, General Ordinances of the City of Madison.