59 F.3d 368
 35 U.S.P.Q.2d 1369
 T.G.I. FRIDAY'S INC., Plaintiff-Appellee,
v.
NATIONAL RESTAURANTS MANAGEMENT, INC., Friday Ventures,
L.P., Radio Gourmet, Inc., 484 8th Operating Inc., 47 E.
42nd Street Rest. Inc., 50th Street Management Corp., Friday
Ventures, G.P., Inc., TGIF Broadway Operating, Inc., 63
First Operating, Inc., Yorkville Retail Management, Third
Avenue 950 Holding Corp., 407 Operating Inc., Fifth 61
Operating Inc., 569 Operating Inc., 420 Operating Inc., 47
Realopp Corp., RN Secaucus, Inc., Murray Riese, Dennis
Riese, Defendants-Appellants,
Performance Network, Inc., Defendant.
 No. 1425, Docket 94-9040.
 United States Court of Appeals,
Second Circuit.
 Argued March 29, 1995.
Decided July 7, 1995.
 
 Edward D. Re, Garden City, NY (Frank J. Livoti, Roberta L. Slattery, Shaw, Licitra, Parente, Esernio & Schwartz, P.C., Garden City, NY, of counsel) for defendants-appellants.
 W. Michael Garner, New York City (Nancy D. Zehner, Schnader, Harrison, Segal & Lewis, New York City, of counsel) for plaintiff-appellee.
 Before MINER and PARKER, Circuit Judges, and SCHEINDLIN, District Judge.*
 MINER, Circuit Judge:
 
 
 1
 Defendants-appellants appeal from a judgment entered on September 15, 1994 in the United States District Court for the Southern District of New York (Roberts, Magistrate Judge) following a bench trial, the court having determined that defendants' use of joint advertising constituted a default of an agreement governing the use of T.G.I. Friday's trademarks and that the defendants failed to effect a timely cure. As a consequence of the default, the court declared defendants' right to use the trademarks terminated and permanently enjoined defendants from using the marks. We reverse and remand for the court to conduct such further proceedings as may be necessary to make a specific finding as to whether plaintiff had a reasonable basis to believe that defendants' use of joint advertising was inconsistent with plaintiff's efforts to insure the uniformity and validity of the marks.
 
 BACKGROUND
 
 2
 Plaintiff T.G.I. Friday's, Inc. ("Friday's") is the owner of the federally registered service marks and trademarks "T.G.I. Friday's" and "Friday's." There are nearly 200 franchised and company-owned Friday's restaurants. Friday's commenced this action against defendants, collectively referred to as the "Riese Organization," claiming that defendants had violated various provisions of an Assignment Agreement as well as certain Franchise Agreements. The Riese Organization, presently run by Murray Riese and his nephew, Dennis Riese, directly or indirectly owns and operates approximately 200 restaurants in the New York area, including the franchised restaurants known as T.G.I. Friday's, Houlihan's, Charlie O's, Nathan's, Pizza Hut, and others. These different franchises are known as "restaurant concepts." All the corporate defendants-appellants are either subsidiaries or affiliates of National Restaurant Management, Inc., which is also known as the Riese Organization.
 
 A. The Reserved Rights
 
 3
 The first T.G.I. Friday's restaurant opened in 1965 on First Avenue in New York City and was owned by Alan N. Stillman. In 1975 Stillman assigned the T.G.I. Friday's marks to Friday's.[1] As part of the Assignment Agreement, Stillman reserved the right to use the marks in connection with his restaurant as well as the exclusive right to use the marks within a seven-mile radius of Columbus Circle in New York City (hereinafter referred to as the "Core Area"). In 1986, Dennis Riese purchased the original T.G.I. Friday's restaurant as well as the Reserved Rights in the Core Area through TGIFNY, a New York corporation that he controlled. In 1990, TGIFNY sold its Friday's restaurants and its interests in the Reserved Rights to Friday Ventures, L.P. ("FVLP"), a limited partnership organized under the laws of Delaware. FVLP is owned, through a general partnership and other corporations, by the Riese Organization.
 
 
 4
 Between 1986 and 1992, Dennis Riese continued to run the original Friday's restaurant and, in addition, managed to build nine other Friday's restaurants in the Core Area. These ten restaurants are referred to as the "Core Restaurants" and operate pursuant to the Reservation of Rights clause of the Assignment Agreement.[2]
 
 B. The Joint Advertising Claim
 
 5
 Friday's alleged in its complaint, among other things, that FVLP breached the Assignment Agreement by engaging in various forms of "joint advertising." Joint advertising refers to advertisement materials that use Friday's marks in connection with other restaurant concepts. Article IV, paragraph 4, of the Assignment Agreement states:
 
 
 6
 In order to insure uniformity in use and to maintain the validity of the Marks, ASSIGNOR [defendants] shall display in connection with its Friday's restaurant-bar operation only such signs or advertising material as shall not be disapproved by ASSIGNEE [plaintiff].
 
 Paragraph 9 provides that:
 
 7
 ASSIGNEE shall have the right to terminate the right herein reserved to ASSIGNOR if ASSIGNOR defaults in the performance of any undertaking given or breaches any of its obligations undertaken herein and such default or breach shall not be remedied within thirty (30) days after written notice thereof is delivered to ASSIGNOR.
 
 
 8
 Friday's alleged that it had disapproved of defendants' use of joint advertising, served written notice on defendants, and that defendants failed to cure the default within the time prescribed.
 
 
 9
 This action was tried without a jury before a magistrate judge upon the consent of the parties, pursuant to 28 U.S.C. Sec. 636(c). The magistrate judge made numerous findings of fact and conclusions of law and dismissed several of plaintiff's claims. Only the findings of fact regarding the joint advertising claims are relevant to this appeal.
 
 
 10
 The magistrate judge identified six instances of joint advertising by defendants and also identified two Notices of Default that Friday's sent to defendants, one on August 9, 1991 and the other on January 30, 1992. Each instance of joint advertising will be discussed as it relates to the two Notices of Default.
 
 
 11
 The magistrate judge found that "[o]n August 9, 1991, FRIDAY'S issued its first 'Notice of Default' to FVLP in connection with joint advertising, regarding the use of an unauthorized menu in magazine format called Knife & Fork Menuzine." The Notice stated:
 
 
 12
 Use of the Knife & Fork Menuzine as the menu at the [Core] Restaurants is a failure to conduct operations in accordance with Friday's national standards, and an unauthorized display of advertising materials and therefore constitutes a default under the Agreement....
 
 
 13
 The magistrate judge found that, "[a]lthough not expressly stated in the Notice of Default," Friday's was objecting to the joint advertising in the Menuzine, which promoted Friday's along with several other restaurant concepts.
 
 
 14
 The court also found that, between August 1991 and January 1992, the Riese Organization used the T.G.I. Friday's marks along with the marks of its other restaurant concepts on coupons that offered twenty-percent discounts on meals to members of the American Automobile Association. Also during that time, the Riese Organization advertised a promotion entitled "X Marks a Free Dinner" in Cityguide, which is a magazine distributed to tourists in New York City. The advertisement offered a free entree with the purchase of a second entree at various Friday's restaurants as well as other restaurant concepts operated by the Riese Organization.
 
 
 15
 On January 30, 1992, Friday's issued its second Notice of Default to FVLP explicitly disapproving of FVLP's use of Friday's marks with those of other restaurant concepts, i.e., joint advertising. The January 30th Notice stated:
 
 
 16
 2) FVLP has deliberately used the Marks in advertising which has been disapproved by Friday's; to wit: use of the Marks in advertisements which include the marks of other restaurant concepts operated by the Riese Organization.
 
 
 17
 As provided at paragraph 9 of Article IV of the Agreement, FVLP has thirty (30) days after delivery of this notice within which to remedy the aforesaid defaults. In order to cure, we expect ... that you provide us with evidence reasonably satisfactory to Friday's that all advertising in which the Friday's mark is used with other restaurant concepts has been discontinued as well as your written undertaking that no such advertising will be conducted in the future.
 
 
 18
 The notice also advised FVLP that Friday's would terminate the Reserved Rights, pursuant to paragraph 9, if the defaults were not remedied within thirty days. FVLP's time to cure the joint advertising default was extended by judicial orders and then by agreement of the parties to May 22, 1992.
 
 
 19
 By letter dated May 15, 1992, FVLP acknowledged receipt of Friday's January 30th Notice of Default and specifically made reference to the disapproval of FVLP's joint advertising. The letter stated:
 
 
 20
 Pursuant to Article IV, paragraph 9 of the [Assignment] Agreement, this is to advise you that FVLP hereby cures this alleged default in that it hereby will discontinue such advertising and will not do so in the future.
 
 
 21
 The letter also advised that it "should not be construed by Friday's in any way as an admission by FVLP that it was in default or in violation of the Assignment Agreement." Despite the assertion that FVLP would discontinue joint advertising, presumably by the date of its letter, May 15th, two more incidents revealed that FVLP continued to engage in joint advertising.
 
 
 22
 One instance was the "3-Point Play" promotion, which involved the purchase of a Knicks baseball cap and a coupon booklet for $5.00. The promotion consisted of posters and table tents[3] that featured Friday's marks in conjunction with the names and marks of other restaurant concepts. The "Kids Eat Free" promotion was implemented at various restaurants in "early 1992" and allowed children under twelve to eat for free. This promotion also involved posters and table tents that featured Friday's marks in conjunction with the names and marks of other restaurant concepts that participated in the promotion.
 
 
 23
 Plaintiff's Senior Vice-President of Marketing, Stephen Hickey, testified that the table tents and posters used by defendants for the "Kids Eat Free" and "3-Point Play" promotions were not consistent with Friday's marketing efforts because they advertised Friday's competitors to customers eating in Friday's restaurants. According to Hickey, the use of joint advertising "blur[red]" Friday's image and made it appear as though all of the restaurants were one and the same. He also claimed that the table tents and coupons were not of the same graphic quality as Friday's advertisements, and that Friday's did not usually participate in discount coupons or dollar-off promotions. In sum, Hickey testified that the Riese Organization's use of joint advertising was inconsistent with Friday's efforts to build a distinct image as a restaurant that offers a unique casual-dining experience.
 
 
 24
 Following the May 22, 1992 deadline to cure the defaults, investigators for Friday's observed table tents and/or posters for the "3-Point Play" and/or "Kids Eat Free" promotions displayed in every Core Restaurant except one, as well as at several other Riese-controlled concepts, such as Houlihan's and Tequila Willie's. These observations were made on May 26, May 29, and June 3, 1992. Based on the initial observations of its investigators, Friday's concluded that defendants had not remedied the joint advertising defaults. Accordingly, on May 28, 1992, Friday's sent FVLP a Notice of Termination of the Assignment Agreement, referring to the May 15th Notice of Cure and stating in part:
 
 
 25
 Your representations were not true, and the default has not been cured, in that you have prior to May 22, 1992 and thereafter continued to use Friday's trademarks and/or service marks in advertising which included other restaurant concepts operated by the Riese Organization. This letter is to notify you that the Agreement terminated as of May 23, 1992.
 
 
 26
 After it had issued the Notice of Termination, Friday's became aware of yet another incident of joint advertising. The "Chase" promotion involved coupons for a twenty-percent discount at defendants' Friday's restaurants as well as five other Riese-controlled restaurant concepts. The coupons were to be sent to Chase Manhattan Bank Visa and Master Card holders in their June, July and August monthly statements. Jane Clements, Director of Promotions for the Riese Organization, was in charge of this promotion, which was carried out by Calet, Hirsch & Spector ("Calet Hirsch"), an advertising agency, and Ross Roy Communications.
 
 
 27
 On May 22, 1992, Clements gave Calet Hirsch final approval for the layout and composition of the Chase coupon. Clifford Drozda, an employee of Calet Hirsch, testified that Calet Hirsch could have removed Friday's restaurants from the coupons to be mailed in June if they had been directed to do so on May 22. However, sometime in June, the coupons, which included the Friday's marks along with the marks of other restaurant concepts, were mailed to hundreds of thousands of Chase customers. Clements did contact Anthony Cottman of Ross Communications sometime in June and inquired as to whether it was possible to withdraw the coupons. Cottman informed her that, at that time, it was too late to withdraw the June mailings. Clements did manage to have Friday's marks removed from the subsequent mailings.
 
 The magistrate judge found:
 
 28
 The evidence is overwhelming ... that no genuine effort was made to discontinue joint advertising and remove existing joint advertising from the defendants' restaurants until after the expiration of the May 22 deadline. Defendants concede that, despite repeated extensions of their time to cure, a substantial amount of joint advertising specifically disapproved by FRIDAY'S remained in their restaurants after May 22. Defendants also acknowledge, as they must, that the joint advertising was not completely removed until more than a week after the May 22 deadline.
 
 
 29
 Accordingly, the magistrate judge found the Core Restaurants in default of the Assignment Agreement, ordered those restaurants to discontinue the use of the marks, pursuant to Article IV, paragraph 11 of the Assignment Agreement, and declared the Reserved Rights terminated. On September 19, 1994, the magistrate judge granted defendants' motion for a stay pending appeal.DISCUSSION
 
 
 30
 Defendants contend that the district court erred by failing to make a specific finding that defendants' use of joint advertising constituted a default under the Assignment Agreement. In order to address this contention, we must apply two well-settled principles. First, it is axiomatic that, when interpreting a contract, the court generally must consider the contract as a whole so that it may give significance to each term. See Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir.1992) (applying New York law); see also Laba v. Carey, 29 N.Y.2d 302, 327 N.Y.S.2d 613, 618, 277 N.E.2d 641, 644 (1971) (holding that a court must interpret a contract to give each provision its full force and effect). Second, "[i]n all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law." Fed.R.Civ.P. 52(a). "This requires the court to make sufficiently detailed findings to inform the appellate court of the basis of the decision and to permit intelligent appellate review." Krieger v. Gold Bond Bldg. Prod., 863 F.2d 1091, 1097 (2d Cir.1988).
 
 
 31
 Here, Friday's alleged that the defendants' use of joint advertising breached Article IV, paragraph 4 of the Assignment Agreement. Paragraph 4 states that "[i]n order to insure uniformity in use and to maintain the validity of the Marks, [defendant FVLP] shall display ... only such signs or advertising material as shall not be disapproved by [Friday's]." Finding that the language is clear and unambiguous, the district court determined that the Assignment Agreement did not impose a pre-approval requirement on defendants but, rather, provided Friday's the "right to disapprove advertising using the Marks." It then assumed that any disapproval was valid and turned its attention to whether Friday's had waived, or was estopped from invoking, its right to disapprove. The court resolved those two issues in favor of Friday's and then focused on whether the defendants had timely cured the default.
 
 
 32
 The magistrate judge's decision, however, does not include any finding or discussion as to whether there was a reasonable basis to believe that defendants' use of joint advertising was inconsistent with Friday's efforts "to insure uniformity in use and to maintain the validity of the Marks." By failing to make such a finding in this case, the court had no basis for resolving the issue of whether Friday's had properly invoked its rights under paragraph 4. Taken as a whole, we conclude that paragraph 4 permits Friday's to disapprove of "signs or advertising material" only if such disapproval promotes its efforts "to insure uniformity in use and to maintain the validity of the Marks." Therefore, as a threshold matter, Friday's must demonstrate that it had a reasonable basis to believe that defendants' use of joint advertising in this case was inconsistent with its efforts to insure the uniformity in use and to maintain the validity of its marks. Here, the court failed to make this threshold finding and that finding is necessary to determine whether a condition of default had occurred.
 
 
 33
 Friday's contends that there was "ample evidence to support the conclusion that the Riese Organization's joint advertising did not preserve 'uniformity in use' of the Marks and that in enforcing such rights, Friday's gave the Riese Organization every reasonable benefit of the doubt." The magistrate judge specifically found that "plaintiff ha[d] properly invoked its rights under [paragraphs] 4 and 9 of the Assignment Agreement," and certainly the record adequately reflects Friday's disapproval of defendants' use of joint advertising. We do not view Friday's disapproval, in and of itself, however, as sufficient to trigger a default under the clear language of paragraph 4. In our view, the court must find that Friday's disapproval was sufficiently related to the clearly stated purpose of paragraph 4--"to insure uniformity in use and to maintain the validity of the Marks."
 
 
 34
 Friday's argues that the testimony of its Senior Vice-President of Marketing, Stephen Hickey, establishes that its disapproval of joint advertising in this case was sufficiently related to insuring uniformity in use of its marks. While this testimony is some evidence that Friday's disapproval served to insure uniformity in use of the marks, the court failed to make adequate findings to support its conclusion that Friday's had properly invoked its rights under paragraph 4. See Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943) (per curiam) (holding that the district court, in the first instance, must make findings that are "sufficient to indicate the factual basis for the ultimate conclusion").
 
 
 35
 Upon remand, the district court may conduct further proceedings and take such further evidence as it deems necessary to determine whether it was reasonable for Friday's to conclude that defendants' joint advertising was inconsistent with Friday's efforts "to insure uniformity in use and to maintain the validity of the Marks." Such additional evidence might include the type of expert testimony and market surveys generally put forth in trademark infringement cases. See generally PPX Enter., Inc. v. Audiofidelity Enter., Inc., 818 F.2d 266, 271 (2d Cir.1987) (explaining that consumer surveys or consumer reaction tests often are used to prove consumer confusion); see also Marcia B. Paul & Anthony F. Lo Cicero, Litigating Trademark, Section 43(a) and Unfair Competition Cases, P.L.I. Patents, Copyrights, Trademarks, and Literary Property Course Handbook Series No. G4-3925 (Oct.1994).
 
 
 36
 Having concluded that the district court must first make this threshold finding, we do not reach any of the other issues raised on appeal. We note that, upon remand, if the court finds that there was a reasonable basis to support Friday's disapproval of joint advertising under the circumstances of this case, and if it adheres to its determinations with respect to notice and failure to cure, the court is free to reconsider the remedy in this case. Once independent evidence on the impact that joint advertising had, if any, on the uniformity in use of Friday's marks is demonstrated, the court may be in a better position to consider whether, assuming that evidence supports the finding of a breach of the Agreement, a remedy at law rather than an equitable remedy might be more appropriate in this case.
 
 CONCLUSION
 
 37
 The judgment of the district court is reversed, and the case is remanded for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Shira A. Scheindlin of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 At some point, Lawrence Horton obtained an interest in the original restaurant, and both he and Stillman were parties to the Assignment Agreement along with Friday's
 
 
 [2]
 In addition to the Core Restaurants, the Riese Organization owns and operates four other Friday's restaurants in the Core Area under Franchise Agreements between Friday's and four separate corporate entities. These four defendants are referred to as the "Franchise Restaurants." The Franchise Restaurants were explicitly excluded from the district court's injunction and thus are not affected by this appeal
 
 
 [3]
 Table tents are placards placed in standing frames at each table