134 F.3d 479
 James A. COOGAN, Plaintiff-Appellant,
v.
Thomas W. SMYERS; Fred Priano, Jr.; Ronald J. Pilozzi;
Thomas J. Christy; Carlton L. Zeisz; Lynette L. Ryan;
Kenneth Horn, in their capacity as voting members of the
City of Tonawanda Common Council and individually; and City
of Tonawanda, New York, Defendants-Appellees.
 No. 387, Docket 96-7158.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 19, 1996.
Decided Jan. 15, 1998.
 
 Timothy A. McCarthy, Buffalo, NY (Burd & McCarthy, Buffalo, NY), for Plaintiff-Appellant.
 Thomas R. Elmer, North Tonawanda, NY (Brick, Brick & Elmer, P.C., North Tonawanda, NY), for Defendants-Appellees.
 Before: WINTER, Chief Judge,* ALTIMARI and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff James A. Coogan brought this action, pursuant to 42 U.S.C. § 1983, against the defendants, members of the City of Tonawanda Common Council ("Council"), after the Council failed to reappoint him as City Clerk of Tonawanda, New York, in January 1994. The essence of Coogan's claim was that the Council, which consisted of a newly elected Republican majority, decided not to continue his employment because of his political activities on behalf of the Democratic party, thereby violating his rights under the First and Fourteenth Amendments. Following a bench trial, a judgment was entered in the United States District Court for the Western District of New York (Edmund F. Maxwell, Magistrate Judge ) finding for defendants and dismissing plaintiff's complaint. Coogan appeals and, for the following reasons, we vacate and remand.
 
 BACKGROUND
 
 2
 The Tonawanda City Clerk is appointed every two years by a majority vote of the Council, the city's seven-member governing body. Coogan was appointed City Clerk, effective January 1, 1984, and served five consecutive two-year terms through December 31, 1993.
 
 
 3
 Throughout Coogan's tenure as City Clerk, the Council was controlled by a Democratic majority. In the November 1993 election, however, the control shifted to four Republicans (Thomas W. Smyers, Fred Priano, Jr., Ronald J. Pilozzi, and Thomas J. Christy) and three Democrats (Carlton L. Zeisz, Lynette L. Ryan, and Kenneth Horn), all of whom are defendants in this action.
 
 
 4
 There was evidence that many of the incoming Council members, among others, had assumed that the position of City Clerk was subject to political appointment and that Council members were free to appoint a new clerk on the basis of party affiliation. At trial, City Attorney Joseph Cassata testified that the City Clerk's position was considered to be "the biggest political plum" appointment made by the Tonawanda Council.
 
 
 5
 Coogan, a lifelong Democrat, had long been politically active. He had served on the City Council himself and, at various times, as Vice Chairman, Treasurer, and committeeperson of the local Democratic party. He was also active in fundraising, voter registration, and screening potential candidates. Over the years, Coogan had actively opposed or supported the campaigns of various members of the Council that acted on his 1994 appointment. He managed the 1987 mayoral campaign for the opponent of defendant Pilozzi, beating Pilozzi by five votes, and he actively campaigned against Pilozzi's mayoral candidacy again in 1989. As a member of the Democratic screening committee, Coogan withheld his endorsement of defendant Horn's candidacy until Horn changed his party affiliation from Liberal to Democrat. In the November 1993 City Council election, Coogan supported defendant Ryan against defendant Priano.
 
 
 6
 There was evidence in the record indicating that Coogan had satisfactorily performed his job as City Clerk, at least until his last term. He was reappointed four times and had received merit raises. City Attorney Cassata testified that Coogan was the best City Clerk of the five he had worked with over a twenty-two-year period. During his tenure as City Clerk, Coogan was never formally reprimanded or disciplined. However, two incidents during Coogan's final term figured into the Council's decision not to reappoint him. In December of 1992, Coogan claimed that he had fallen and injured himself on property leased by the Knights of Columbus (the "Knights") from the City of Tonawanda. Coogan consulted an attorney and filed a notice of claim against the Knights and the City, but did not follow up with a lawsuit. There was testimony at trial that members of the Knights, including defendants Priano and Horn, were upset by Coogan's conduct. Priano testified that there was a question as to whether the accident occurred on the Knights' property, and that he believed Coogan had lied in the matter.
 
 
 7
 The second incident arose in March 1993 after a Tonawanda firefighter, shortly before his retirement, claimed a seventeen percent loss of hearing as an employment-related disability. Coogan, to whom a news reporter had been directed for information, not only verified the claim as a matter of public record, but also made statements that implicitly questioned the claim's merits. Coogan further expressed concern that this claim might lead to others, resulting in higher insurance premiums for the City. The statements appeared in The Tonawanda News and prompted a call by the Firefighters' Union for Coogan's immediate removal. The Council summoned Coogan to appear before it and instructed him to send a letter of apology to the Firefighters' Union. At least two of the defendants, Smyers and Horn, claimed to be very upset over this incident.
 
 
 8
 Shortly after the 1993 City Council election, the Republicans on the Council formed the "Tonawanda City Clerk Selection Committee" (the "Committee"). The Committee consisted only of Republicans because, according to Smyers' testimony, the City Clerk was believed to be the Republican majority's pick. The Committee interviewed six candidates, all Republicans, for the City Clerk's position and later sent letters to five of them stating that Jack Lawrence, the sixth candidate, had been selected. Neither Coogan nor Gary Doane, the man eventually appointed, were interviewed by the Committee.
 
 
 9
 During this period, Coogan met separately with Smyers, Pilozzi, and Christy in the course of his duties as City Clerk. Coogan testified that during each of these meetings he raised the issue of his candidacy for reappointment as City Clerk and was told by all three that they were looking at Republican candidates. Concerned that he would not be reappointed City Clerk, Coogan retained legal counsel Timothy McCarthy. On December 23, 1993, McCarthy informed the Council that it would be illegal to fail to reappoint Coogan on the basis of his political affiliation.
 
 
 10
 Between December 28, 1993, and January 17, 1994, the newly elected Council held a series of meetings to deal with the appointment. At the first meeting, the Council deferred action on the City Clerk appointment pending advice from its own newly retained counsel Brick, Brick & Elmer ("B,B & E"). On January 11, B,B & E advised the Council that Coogan could be replaced for malfeasance, but not for purely political reasons. Council discussions focused upon Coogan's level of political activity, which was denounced by several members, as well as the Knights and firefighter incidents and concerns about the pending litigation. On January 17, B,B & E furnished the Council with an opinion letter that stated that a party-line vote replacing Coogan would have less than a twenty percent chance of being upheld in federal court. At the meeting, and in response to specific questions, B,B & E stated that the odds were improved if the appointment went to another Democrat or to a nonpolitical candidate. The Council took a straw vote and four of the seven Council members (three Democrats and one Republican) voted to reappoint Coogan.
 
 
 11
 On the following day, January 18, the Council voted on four nominees for the City Clerk's position. In order to be appointed, a nominee required an affirmative vote by four members, a majority of the full Council. Coogan failed to garner a majority: defendants Ryan, Zeisz, and Horn voted for Coogan; Priano voted against; and Smyers, Pilozzi, and Christy abstained. The ballots on the three other candidates also failed to achieve a majority, although each Council member voted in favor of at least one candidate. Coogan continued in the position as the "holdover" clerk.
 
 
 12
 On February 1, 1994, the Council again sought to appoint a City Clerk. A second ballot to reappoint Coogan failed: Ryan and Zeisz voted for Coogan; Priano, Pilozzi, Christy, and Horn voted against; and Smyers abstained. The Council then voted on Gary Doane, who was a Democrat although apparently politically inactive. Smyers, Horn, Pilozzi, and Priano voted in favor of Doane, while Zeisz, Ryan, and Christy voted against him. Doane was sworn in as City Clerk the same evening.
 
 
 13
 On January 14, 1994, Coogan brought this action under 42 U.S.C. § 1983 in anticipation of the Council's failure to reappoint him. His complaint alleged that the Council replaced him as City Clerk because of his political activity and party affiliation, in violation of his First and Fourteenth Amendment rights. Coogan requested, inter alia, injunctive relief and money damages.
 
 
 14
 With the consent of the parties, the matter was referred for determination, pursuant to 28 U.S.C § 636(c), to Magistrate Judge Maxwell (the "district court"). Following a four-day bench trial in January of 1995, the district court found in favor of the defendants and dismissed Coogan's complaint. Applying the "dual-motive" test established in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the district court determined that Coogan had established a prima facie case of discrimination and that his political activity and affiliation were a "substantial or motivating factor" in the Council's decision not to reappoint him. However, the district court also found that the defendants had "presented sufficient evidence to demonstrate that they would not have reappointed Mr. Coogan regardless of his active participation in the Democratic party."
 
 
 15
 Coogan moved the district court to alter or amend the judgment, pursuant to Fed.R.Civ.P. 59(e). Coogan argued that the district court erred as a matter of law because it did not find permissible nonpolitical reasons for each defendant's decision not to reappoint him, and because it failed to make any determination with respect to the January 18 vote. The district court rejected these contentions. This appeal followed.
 
 DISCUSSION
 
 16
 Generally, a public employee is protected from adverse employment decisions based upon the employee's exercise of his First Amendment rights. See Rutan v. Republican Party, 497 U.S. 62, 75-76, 110 S.Ct. 2729, 2737-38, 111 L.Ed.2d 52 (1990); Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968). Political patronage or party affiliation are impermissible reasons for dismissing government employees absent a showing that "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980); see also Rutan, 497 U.S. at 74-76, 110 S.Ct. at 2736-38; Elrod v. Burns, 427 U.S. 347, 372-73, 96 S.Ct. 2673, 2689-90, 49 L.Ed.2d 547 (1976). The rule has been extended to promotion, transfer, recall, and hiring decisions based on party affiliation, see Rutan, 497 U.S. at 79, 110 S.Ct. at 2739-40, the denial of compensation, see Lieberman v. Reisman, 857 F.2d 896, 900 (2d Cir.1988), demotion, see McEvoy v. Spencer, 124 F.3d 92, 103-05 (2d Cir.1997), and protection of independent contractors, see O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, ----, 116 S.Ct. 2353, 2361, 135 L.Ed.2d 874 (1996). Of particular relevance here, while there is no property interest or entitlement to be reappointed to a government position, failure to reappoint solely because of party affiliation is impermissible. See O'Farrell v. Lewiston Town Bd., No. 94-CV-0330E(H), 1997 WL 211364, at * 2 (W.D.N.Y. Apr. 24, 1997); Visser v. Magnarelli, 530 F.Supp. 1165, 1168 (N.D.N.Y.1982); Brady v. Paterson, 515 F.Supp. 695, 698-99 (N.D.N.Y.1981).
 
 
 17
 The defendants have pointed out that the Tonawanda City Clerk's position historically was one of political patronage and that Coogan himself was a patronage appointment. Although this may be true, it is irrelevant; a history of past patronage, even if a source of benefit to the plaintiff, does not render the practice constitutional. See Board of County Comm'rs, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668, ----, 116 S.Ct. 2342, 2350, 135 L.Ed.2d 843 (1996); Elrod, 427 U.S. at 353-54, 96 S.Ct. at 2679-80.
 
 
 18
 The district court correctly recognized that a public employee's claim that an adverse employment decision was motivated by the exercise of the employee's First Amendment right of association is analyzed under the burden-shifting framework set forth in Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576 (1977). See, e.g., O'Hare Truck Serv., 518 U.S. at ----, 116 S.Ct. at 2360-61; Vezzetti v. Pellegrini, 22 F.3d 483, 486-87 (2d Cir.1994); Holo-Krome Co. v. NLRB, 954 F.2d 108, 110 (2d Cir.1992); Visser v. Magnarelli, 530 F.Supp. 1165, 1169 (N.D.N.Y.1982). In order to prevail under Mt. Healthy, the plaintiff must first establish by a preponderance of the evidence (1) that the plaintiff's conduct at issue was constitutionally protected, and (2) that it was a substantial or motivating factor in the employment decision. See Umbehr, 518 U.S. at ----, 116 S.Ct. at 2347; White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir.1993). Once this burden is met, the defendant may escape liability only by proving by a preponderance of the evidence that the same employment action would have been taken absent the protected conduct. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; White Plains Towing, 991 F.2d at 1059. We review de novo the district court's finding that the conduct was protected, and we review for clear error the district court's findings that the employment decision was motivated by the protected conduct and that the decision would have been taken anyway absent the protected conduct. See Piesco v. Koch, 12 F.3d 332, 342 (2d Cir.1993); Wytrwal v. Saco Sch. Bd., 70 F.3d 165, 170 (1st Cir.1995).
 
 
 19
 Neither party contests the district court's legal conclusion that Coogan's long-time political activity and Democratic affiliation were conduct protected by the First Amendment. The parties stipulated before trial that the City Clerk's position is a nonpolicymaking and nonconfidential government position. The duties of the City Clerk are largely ministerial and include record keeping and the nondiscretionary issuance of permits and licenses. On these facts, political party affiliation would not be required for effective service as City Clerk, see Branti, 445 U.S. at 518, 100 S.Ct. at 1294-95. Therefore, the district court properly concluded that Coogan's political activity and affiliation were protected conduct.
 
 
 20
 Likewise, the parties do not challenge the district court's factual finding that this protected conduct was a substantial or motivating factor in the decision not to reappoint him as City Clerk. The court's finding is amply supported by evidence indicating that each of the five defendants that voted against Coogan or abstained had done so, at least in part, for impermissible political motives. Witnesses testified that Smyers had referred to Coogan as a "sign pounder," and that Pilozzi had told Coogan, "You know, Jim, you know, you've been a very active Democrat. You've been out, you know, working. We've seen you on the streets working on, you know, numerous occasions for my competition." Horn admitted that he preferred someone less politically active than Coogan as City Clerk, which was why he favored Gary Doane. Priano stated that one of the reasons he opposed Coogan was because of his political activities. According to Coogan's testimony, Christy said that the Republican members had "to make a compromise on [a] Republican candidate."
 
 
 21
 The focus of this appeal, then, is on the third prong of Mt. Healthy, namely, whether the district court committed clear error in determining that the defendants had met their burden of showing that Coogan would not have been reappointed irrespective of his political activity or party affiliation. Coogan makes three arguments on appeal: (1) that the district court applied an incorrect rule of causation and did not find nonpolitical reasons for each defendant's vote; (2) that the nonpolitical reasons stated by the district court are not legitimate; and (3) that the district court improperly confined its inquiry to the February 1 vote and failed to analyze the Council's January 18 vote under Mt. Healthy, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
 
 I. The Rule of Causation under Mt. Healthy
 
 22
 Coogan argues that the district court incorrectly applied Mt. Healthy because it analyzed the defendants' motives in aggregation rather than determining whether each defendant individually would have voted against Coogan's reappointment irrespective of his political affiliation or activity. As a corollary to this argument, Coogan asserts that the district court failed to make sufficiently specific findings as to each defendant as required under Fed.R.Civ.P. 52(a).
 
 
 23
 The district court confined its analysis to the Council's February 1 vote and stated its findings as follows:
 
 
 24
 Defendant Smyers testified that he was furious over the episode involving the retiring firefighter, and that alone provided enough incentive for him to not consider reappointing Mr. Coogan. And defendant Horn was upset as well. Defendant Ryan corroborated this. Mr. Horn testified also that prior to the election he proposed Gary Doane for the position, based on his qualifications, and that Mr. Doane was his first choice for the job.
 
 
 25
 Priano testified that he did not vote for Coogan because of Coogan's threatened lawsuit against the Knights of Columbus, and because he had a general dislike for Mr. Coogan. This was corroborated by defendant Zeisz.
 
 
 26
 ... The flap over the firefighter who filed the compensation claim and Mr. Coogan's threatened lawsuit against the Knights of Columbus and the City together with Horn's preference for another Democrat (Doane) satisfy me that even in the absence of political issues, he would not have been reappointed.
 
 
 27
 In Selzer v. Fleisher, 629 F.2d 809 (2d Cir.1980), a multiple-defendant case, we held that the question of whether the adverse employment decision would have been made absent the protected conduct is "applicable to each defendant separately and cannot be satisfied by a finding as to the defendants collectively." Id. at 814. This rule of causation allows an individual defendant to escape personal liability by proving a legitimate alternative motive for his vote. Furthermore, if a majority of defendants prove that their individual votes against the plaintiff would have been the same irrespective of the plaintiff's protected conduct, then the defendants as a group cannot be held liable, and no individual defendant, even one whose proof falls short, can be so held because causation is absent. See id. at 814 n. 1 (Kaufman, J., concurring in part and dissenting in part).
 
 
 28
 Our holding in Jeffries v. Harleston, 52 F.3d 9 (2d Cir.1995), reemphasizes this point: even if some defendants based their decision solely on impermissible grounds, a finding that a majority of defendants acted adversely to the plaintiff on legitimate grounds is sufficient for all to escape liability. In Jeffries, fifteen defendants acted to limit a City College professor's term as chairman of the Black Studies department because of an inflammatory speech he had given. We held that under "elementary principles of causation," Jeffries had suffered no cognizable injury because even though the jury had found that six defendants acted for impermissible retaliatory motives, the fact that nine defendants, a clear majority, had voted against Jeffries for constitutionally permissible reasons constituted "a superseding cause breaking the causal chain between the tainted motives ... and the decision to limit Jeffries' term." Id. at 14. In the instant case, therefore, if four of the defendants who voted against Coogan's reappointment proved that, in addition to impermissible political motives, they had legitimate motives for their vote, then neither the Council as a whole nor any of its members could be held liable, even if one or more defendants fail to prove a legitimate motive.
 
 
 29
 Unfortunately, the present record is inadequate to enable us to apply the foregoing principles or " 'to inform the appellate court of the basis of the decision and to permit intelligent appellate review.' " T.G.I. Friday's Inc. v. National Restaurants Management, Inc., 59 F.3d 368, 373 (2d Cir.1995) (citation omitted). No doubt because the district court ultimately seemed to consider those who voted against Coogan in the aggregate, its findings do not sufficiently delineate the reasons each defendant gave for his or her vote and whether such reasons support a conclusion that a vote against Coogan would have inevitably followed. We therefore must remand for the district court to make appropriate findings in accordance with Fed.R.Civ.P. 52(a).
 
 
 30
 At the February 1 Council meeting, Priano, Horn, Christy, and Pilozzi voted against Coogan while Smyers abstained (the functional equivalent of a negative vote), thus blocking his reappointment. The district court findings covered Smyers, Horn, and Priano, but not Pilozzi or Christy. The district court's only mention of Pilozzi or Christy, other than reciting their votes, was to note that each told Coogan they were looking at Republican candidates. The district court then concluded that "there were legitimate reasons for the majority of the Council to not reappoint Mr. Coogan." (emphasis added). We are left in the dark as to whether the district court in fact determined that each defendant not voting for Coogan (or at least four of them) had a nonpolitical reason for his vote[1] or whether the district court simply found some legitimate reasons why the Council could have voted against Coogan. If the latter, the district court would have run afoul of the principle in Selzer that legitimate motives cannot be imputed to the deciding body as a whole, but must be found individually. 629 F.2d at 813-14.
 
 
 31
 Since we are unable to determine whether the district court applied the proper rule of causation under Selzer, we remand to allow the district court to make the necessary findings.
 
 II. Nonpolitical Justifications
 
 32
 Coogan next argues that the record does not support the district court's findings that Smyers, Horn, and Priano offered legitimate nonpolitical reasons for voting against Coogan's reappointment.
 
 
 33
 At the outset, we note that Coogan asserts three arguments apparently for the first time on appeal. Two are related: he asserts that his statements concerning the firefighter's claim as well as his filing of a legal claim against the Knights and the City are both protected by the First Amendment and, therefore, cannot provide legitimate nonpolitical motives for voting against his reappointment. Coogan's third argument is that any legitimate reason advanced by the defendants must be confined to his past job performance or capabilities.
 
 
 34
 Ordinarily, we "will not consider an issue raised for the first time on appeal." Greene v. United States, 13 F.3d 577, 586 (2d Cir.1994); Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). This rule "may be disregarded in two circumstances: (1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding." Readco v. Marine Midland Bank, 81 F.3d 295, 302 (2d Cir.1996); see also Greene, 13 F.3d at 586 (entertaining new issues is discretionary with panel hearing appeal). Because we remand this case to the district court for further findings, we will not consider at this time whether plaintiff's first two arguments have met the "manifest injustice" standard. Instead, we direct the district court on remand to address these claims on the merits. See Readco, at 303.
 
 
 35
 We reach Coogan's third argument because it is a purely legal issue that is easily resolved. Coogan maintains that the only permissible motives available to defendants must be related to his job performance. This is simply incorrect. The only constitutional limitation placed on the Council's appointment power is that it may not make its decision based upon the plaintiff's protected conduct. The City Clerk's position was not tenured; it carried a two-year term. Thus, at the time of the Council vote Coogan was a prospective employee. He had no property right or entitlement to the position, and the Council was not required to show cause for failing to reappoint him. The constitutional proscription on patronage dismissal "does not give a permanent appointment to the City Clerk. The Council can always dismiss or fail to rehire the Clerk for legitimate, apolitical reasons." Paradise v. O'Laughlin, 621 F.Supp. 694, 698 (W.D.N.Y.1984). Moreover, both the Knights and firefighter incidents bear directly on Coogan's perceived capability to perform the job of City Clerk because they may reflect upon his integrity, professionalism, and judgment.
 
 
 36
 Coogan asserts that in any event there was insufficient evidence to support the district court's findings of nonpolitical reasons for Smyers, Priano, and Horn. We will not upset a district court's factual finding unless we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 A. Smyers
 
 37
 The district court found that Smyers would have voted against reappointing Coogan irrespective of political motivations because he was angered by the firefighter incident. To be sure, there is evidence in the record that undercuts Smyers' nonpolitical explanation. Smyers admitted that he never asked that Coogan be disciplined or that anything be placed in his file, despite the letter from the Firefighters' Union asking for Coogan's discharge. Nor did he raise the issue between the time of the incident, March 1993, and the January 11 meeting--not even to Coogan when they discussed his candidacy for reappointment in November of 1993. Additionally, Smyers voted in favor of merit raises for Coogan in November and December of 1993, one month before Smyers claims his anger over the firefighter incident motivated him to vote against Coogan's reappointment.
 
 
 38
 On the other hand, the record reflects that following the firefighter incident, the Council, of which Smyers was a member, called Coogan before it and instructed him to write a letter of apology to the Firefighters' Union. Testimony by several witnesses established that Smyers did raise the firefighter incident at both the January 11 and 17 meetings. Finally, there was evidence that Smyers was very upset by Coogan's comments at the time the newspaper article was released. On the foregoing record, we are unable to say that the district court's conclusion as to Smyers was clearly erroneous.
 
 B. Priano
 
 39
 The district court found that Priano would have voted against reappointing Coogan irrespective of his political activity because Priano was angered over the Knights incident and had a "general dislike for Mr. Coogan." Coogan asserts that the district court should not have credited Priano's "general dislike" for him because such subjective defenses are likely to be merely pretext for discriminatory intent. See, e.g., Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1040 (2d Cir.1979) ("district court must carefully scrutinize suggested reasons that are not objective in nature"). While we might agree that skepticism is warranted when a defendant asserts bare subjective animosity, without more, to rebut discriminatory motives, we are not presented with that situation here.
 
 
 40
 There was ample evidence to support the conclusion that Priano's dislike of Coogan had nothing to do with Coogan's political activity. Priano, himself a registered Democrat who had been elected to the Council on the Republican line and a member of the Knights, testified that his dislike of Coogan was grounded in his belief that Coogan had lied about the Knights incident. Ryan testified that Priano told her on several occasions that he had sought election to the Council for the very purpose of removing Coogan from the position of City Clerk because of the Knights incident. This corresponds with the fact that Priano was the only council member who consistently voted against Coogan. Accordingly, we find no error in the district court's finding as to Priano.
 
 C. Horn
 
 41
 The district court found two motives for Horn's vote that it believed to be legitimate. The first was that Horn, also a Democrat, voted against Coogan because his "first choice for the job" was Doane, another Democrat. Coogan argues that this motive is not sustainable because Horn's preference was based on Doane's political inactivity when compared to Coogan. We agree.
 
 
 42
 Horn testified that he preferred Doane to Coogan from the outset because he had worked with Doane previously and was impressed by him. However, Horn's testimony makes clear that he voted for Doane and opposed Coogan because he "preferred someone being not politically active" in the City Clerk's position. To the extent that Horn's stated preference for Doane was based upon the relative level of political activity between the candidates--and we believe a fair reading of the record so indicates[2]--it cannot provide a legitimate reason for voting against Coogan.
 
 
 43
 But the district court also found that Horn voted against Coogan because of Coogan's handling of the firefighter incident. There was evidence to support this conclusion as well as evidence (that did not result in a finding) that Horn, a member of the Knights of Columbus, was upset about the Knights incident. The two motives specifically attributed to Horn by the district court are separate; hence the error of the district court's first finding does not taint the second, see Glatt v. Chicago Park Dist., 87 F.3d 190, 193 (7th Cir.1996), and the district court's conclusion that Horn had a permissible motive for voting against Coogan was not clearly erroneous.
 
 III. The January 18 Vote
 
 44
 Finally, Coogan argues that the district court erred by confining its Mt. Healthy analysis to the February 1 vote, thereby failing to determine whether a majority of the defendants had proven nonpolitical reasons for their votes on January 18. We agree that the district court should have analyzed the January 18 vote under the Mt. Healthy standard.
 
 
 45
 Coogan was first denied reappointment at the January 18 meeting. If the Council cannot prove that they would have denied Coogan's reappointment on January 18 irrespective of his political activities, then Mr. Coogan's First Amendment rights were violated by that vote. See Rutan, 497 U.S. at 76, 110 S.Ct. at 2737-38.
 
 
 46
 The district court explained that it did not address the January 18 vote because "[a]t that point, ... the entire selection process was jumbled and confused." It is unclear to us why such atmospherics are relevant. While the Council members may have been "uncertain of their obligations and the latitude the law afforded them," as the district court found, they still proceeded with the resolution and voted not to reappoint Coogan. The Council members had been advised by counsel on both January 11 and January 17 that they could not vote against Coogan simply because of his politics, and they received no different legal advice thereafter.
 
 
 47
 The district court also pointed to the abstentions by Pilozzi, Smyers, and Christy in the January 18 vote as evidence of the alleged confusion. However, an abstention is no less a legislative act than a "yes" or "no" vote. See Affrunti v. Zwirn, 892 F.Supp. 451, 460 (E.D.N.Y.1995) (town board members "clearly acted in their legislative capacities ... when they ... abstained from voting upon ... resolutions"); Rabkin v. Dean, 856 F.Supp. 543, 546-47 (N.D.Cal.1994) (votes and abstentions were legislative acts). Moreover, under the voting rules of the Council, which require an affirmative vote by a majority of the full Council, an abstention is the functional equivalent of a negative vote. See Wrzeski v. City of Madison, 558 F.Supp. 664, 668 (W.D.Wis.1983)("[w]hen enough members abstain from voting on an issue, the measure will fail for lack of an affirmative vote by the majority"). We see no reason, therefore, why the motives for abstaining should not be analyzed in the same manner as the motives for voting "yes" or "no."[3] See, e.g., Jeffries v. Harleston, 52 F.3d 9, 14 (2d Cir.1995)(jury found, inter alia, that defendant who abstained acted for retaliatory motives); Cooper v. Town of E. Hampton, 888 F.Supp. 376, 379-80 (E.D.N.Y.1995) (allowing claim for retaliatory conduct against defendants who voted "no" or abstained). Indeed, to hold otherwise would create a convenient means of engaging in impermissible conduct while avoiding liability. Cf. Federal Express Pilots v. National Mediation Bd., No. 93-2145, 1994 WL 761052, at * 8 (D.D.C. Oct. 21, 1994) (noting ability to skew or manipulate voting by abstaining).
 
 
 48
 We do not mean to disparage the right of any person to abstain on an official vote. Indeed, the First Amendment protects such a right. See Wrzeski, 558 F.Supp. at 667-69; Bundren v. Peters, 732 F.Supp. 1486, 1499-1500 (E.D.Tenn.1989). Moreover, we realize that there exist legitimate, nonpolitical reasons for abstaining, such as where the voter lacks sufficient information to vote "yes" or "no." Our point here is that the district court failed to make such a finding for any of the individual abstainers.
 
 
 49
 The defendants counter that it is irrelevant whether the district court addressed the January 18 vote because the same result occurred on February 1. While the January 18 vote is irrelevant with respect to the ultimate outcome of the vote, it is hardly irrelevant to this case. Ryan, Zeisz, and Horn all voted in favor of Coogan's reappointment on January 18. Coogan only needed one more vote. Given the evidence that Christy, Pilozzi, Smyers, and Priano were opposed to Coogan's reappointment at least in part for political reasons, for the Council to escape liability all four must individually demonstrate legitimate motives for either abstaining or voting against the reappointment.
 
 CONCLUSION
 
 50
 For the foregoing reasons, we vacate and remand for additional findings. In light of Rule 52(a) and Selzer, we direct the district court to analyze each of the defendants individually, and to determine whether a majority of them have established that they had a legitimate, nonpolitical motive for abstaining or voting against Coogan's reappointment on both January 18 and February 1. We also direct the district court to address Coogan's contention that both the firefighter and Knights incidents constitute conduct protected by the First Amendment and therefore do not afford the defendants legitimate motives for voting against his reappointment.
 
 
 
 *
 Judge Winter became Chief Judge on July 1, 1997
 
 
 [1]
 There was a possible evidentiary basis for such a determination with respect to Pilozzi, who testified that he voted against Coogan because of Coogan's "glaring errors" and "questionable attributes." Christy, however, offered no nonpolitical reason for his vote
 
 
 [2]
 Horn's testimony consisted of the following exchange:
 Q: And is it fair to say ... that you favored Mr. Doane primarily because he was ... apolitical as opposed to being a democrat?
 A: I would say yes.
 Q: And as much as you would say that Mr. Doane was--characterize him as apolitical, would you characterize Mr. Coogan as being political or politically active?
 A: I would say that.
 Q: And is it fair to say that you favored somebody who was apolitical in the clerk's job?
 A: Not--being not politically active, right?
 Q: That's correct.
 A: I preferred someone being not politically active.
 Q: And is it also fair to say that you favored having somebody apolitical replace Mr. Coogan?
 A: With knowledge of the job.
 (Tr. Jan. 5 at 177-78).
 
 
 [3]
 The district court did just that when it analyzed Smyers' motives for abstaining on February 1