Leonard JEFFRIES, Plaintiff–Appellee,

v.

Bernard HARLESTON, individually and in his official capacity as president of City College of New York, W. Ann Reynolds, individually and in her official capacity as Chancellor of City University of New York, James P. Murphy, Edith B. Everett, Herman Badillo, Sylvia Bloom, Gladys Carrion, Louis C. Cenci, Michael J. Del Guidice, Stanley Fink, William R. Howard, Harold M. Jacobs, Susan Moore Mouner, Calvin O. Pressley, and Thomas Tam, individually and in their official capacities as Trustees of City University of New York, Defendants–Appellants,

Blanche Bernstein, Defendant.

No. 953, Docket 93–7876.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1994.

Decided April 18, 1994.

Vacated Nov. 14, 1994.

Decided April 4, 1995.

Kathie Ann Whipple, Acting Bureau Chief, Office of Atty. Gen., State of N.Y. (Dennis C. Vacco, Atty. Gen., State of N.Y., of counsel), for defendants-appellants.

Joseph Fleming, New York City, for plaintiff-appellee.

Sheldon D. Camhy, Camhy Karlinsky & Stein, New York City, for amicus curiae Anti–Defamation League.

Kenneth S. Stern, Samuel Rabinove, Wendy Lecker, Penina Goldstein, New York City, for amicus curiae The American Jewish Committee.

Arthur L. Galub, New York City, for amicus curiae University Faculty Senate.

Henry Mark Holzer, Karen Johnson, Brooklyn, NY, for amicus curiae The Individual Rights Foundation.

Before: VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges, and BURNS, District Judge.*

McLAUGHLIN, Circuit Judge:

In *Jeffries v. Harleston,* 21 F.3d 1238 (2d Cir.1994), we affirmed the district court's judgment that 15 university officials violated the First Amendment rights of a professor, Leonard Jeffries, by reducing his term as a department chairman because of a controversial speech (the "Albany speech") he had given off campus. Our decision rested on what we understood to be the applicable rule that the government cannot take action against an employee for speaking on public issues, unless it first shows that the speech actually "impaired the efficiency of government operations." *Id.* at 1245. We also vacated the part of the judgment that found six of the defendants liable for punitive damages, as the jury's special verdict responses were "hopelessly irreconcilable" on whether these defendants harbored the necessary evil motives. *Id.* at 1250.

A month after our decision in *Jeffries,* the United States Supreme Court decided *Waters v. Churchill,* 511 U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). A four-justice plurality in *Waters* held that the government could fire an employee for disruptive speech based on its reasonable *belief* of what the employee said, regardless of what was *actually* said. *See Waters,* 511 U.S. at ——, 114 S.Ct. at 1889. In addition, when weighing the value of the employee's speech against the interference with government operations, the *Waters* plurality also indicated that a government employer need only show that the speech is *likely to be disruptive* before the speaker may be punished. *See id.* at ——, ——, 114 S.Ct. at 1887, 1890.

The *Jeffries* defendants, relying on *Waters,* petitioned the Supreme Court for a writ of certiorari. The Supreme Court granted certiorari, and, without comment, vacated *Jeffries* and remanded to us for reconsideration in light of *Waters. See Harleston v. Jeffries,* —— U.S. ——, ——, 115 S.Ct. 502, 503, 130 L.Ed.2d 411 (1994) (memorandum).

On remand from the Supreme Court, we reverse the district court's judgment because defendants made a substantial showing at trial that their decision to limit Jeffries' term was based upon a reasonable prediction that the Albany speech would disrupt university operations.

## BACKGROUND

We summarize the facts briefly; a more detailed account appears in our initial opinion. *See Jeffries,* 21 F.3d 1238, 1241–44.

---

* Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

Leonard Jeffries was the chairman of the Black Studies department at City College of New York ("City College"), which is part of the City University of New York ("CUNY") system. In delivering the Albany speech, which addressed the bias of New York State's public school curriculum and the history of black oppression, Jeffries made several derogatory statements, particularly about Jews. After the speech, City College President Bernard Harleston and CUNY Chancellor Ann Reynolds arranged for the CUNY Board of Trustees to vote as to whether to limit Jeffries' term as department chair to one year, even though such terms normally last three years. A majority of the 14 members of the CUNY Board of Trustees voted to limit Jeffries' term. The votes were cast as follows: Nine of the Trustees voted to limit Jeffries' term to a year; four voted to remove him immediately; one abstained because she had made critical comments about Jeffries in the past. Harleston and Reynolds did not vote because they were not Trustees.

Jeffries sued Harleston, Reynolds, and all 14 of the individual CUNY trustees under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York (Kenneth Conboy, *Judge* ), alleging that they removed him in violation of the First Amendment. (One of the 16 original defendants, Trustee Blanche Bernstein, died during the trial, and Jeffries discontinued his claims against her.) Jeffries sought reinstatement and punitive damages.

The jury was given several sets of interrogatories to answer. In response to the first wave, the jury found that the defendants demoted Jeffries because of the Albany speech. The jury's answers also indicated that the Albany speech did not disrupt "the effective and efficient operation of the Black Studies Department, the College, or the University," but that the defendants "were motivated in their actions by a reasonable expectation" that the speech would cause such a disruption. The judge concluded from these responses that all 15 remaining defendants had violated Jeffries' First Amendment rights because the speech was substantially on matters of public concern, and did not cause actual harm to CUNY.

The judge then submitted another wave of questions to the jury to discern the individual liability of each of the 15 defendants. In response, the jury found that only six defendants—Harleston, Reynolds, and Trustees Edith Everett, Herman Badillo, Sylvia Bloom, and Harold Jacobs (together, the "Harleston defendants")—took action against Jeffries because of the Albany speech, and would not have done so had Jeffries not given the speech. Of the four Trustees who are Harleston defendants, three had voted to remove Jeffries from his post immediately, and one had abstained because of the negative statements she had made about Jeffries in the past. (The fourth vote to remove Jeffries immediately came from Trustee Bernstein, who died during the trial, and is not part of this appeal.) The jury found that the other nine defendants, all of whom had voted to limit Jeffries' term to one year, did not act with the same retaliatory animus.

On the third and final wave of interrogatories, the jury found that all six of the Harleston defendants had "acted with malicious intent to violate the plaintiff's rights under the First Amendment . . . or with malicious intent to unlawfully injure him, or . . . with a callous or reckless disregard of the plaintiff's First Amendment rights." Based on these findings, the jury awarded punitive damages against the Harleston defendants.

After finding that the defendants were not shielded from liability by qualified immunity, the district judge entered judgment consistent with the jury responses (although he reduced the punitive damage amounts). In addition, the judge ordered the defendants to reinstate Jeffries as chairman of the department for two years. The defendants appealed.

We affirmed the reinstatement order, agreeing with the district court that the defendants had violated Jeffries' right to free speech, and that the Harleston defendants were not shielded by qualified immunity. *See Jeffries,* 21 F.3d at 1245–49. We found, however, that the jury's special verdict responses were inconsistent regarding the six Harleston defendants' liability for punitive damages. Specifically, we could not reconcile the jury's finding that all 15 of the

remaining defendants demoted Jeffries based on their reasonable belief that the Albany speech would harm CUNY, with its later finding that the six Harleston defendants demoted Jeffries out of a malicious desire to violate his free speech rights, or at least in reckless disregard of these rights. Thus, we vacated the punitive damage awards against the six Harleston defendants, and remanded for a new trial against these six on the punitives issue. *See id.* at 1249–50.

Upon the defendants' petition, the Supreme Court granted certiorari, vacated our judgment, and remanded with instructions to reconsider our opinion in light of *Waters.* *See Harleston,* —— U.S. at ——, 115 S.Ct. at 503.

## DISCUSSION

One of the principles driving our earlier *Jeffries* decision was that the First Amendment protects a government employee who speaks out on issues of public interest from censure by his employer unless the speech *actually* disrupted the employer's operations. *See Jeffries,* 21 F.3d at 1245. We expressly held that a mere reasonable belief that the speech would interfere with the employer's operations is not enough to discipline an employee, unless the employee holds a high-level, policymaking position. *See id.* at 1246–47.

Applying that standard, we studied the Albany speech, and found that it squarely involved issues of public concern—namely, the New York state public school curriculum, and black oppression throughout history. *See id.* at 1245–46. Then, after examining CUNY's bylaws, and the testimony of CUNY officials, we agreed with the district court that the position of Black Studies Chairman was a ministerial position at CUNY, and carried no policymaking authority. *See id.* at 1246–47. Thus, we held that the defendants bore the burden at trial to show that the speech actually interfered with CUNY operations. *See id.* at 1246. Given the jury's finding that the defendants had failed to make this showing, we held that the defendants had violated Jeffries' free speech rights. *See id.* at 1248.

At the time, the strict *actual* interference requirement reflected the law of the Second Circuit. *See Piesco v. City of New York,* 933 F.2d 1149, 1160 (2d Cir.) (if the speech "so clearly touch[es] on matters of public concern, the government is required to demonstrate interference with the efficient functioning of the workplace"), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *see also Rankin v. McPherson,* 483 U.S. 378, 390–91, 107 S.Ct. 2891, 2900–01, 97 L.Ed.2d 315 (1987) (nature of employee's position determines whether the employee's speech "somehow undermines the mission of the public employer"). The recent *Waters* decision, however, has loosened *Piesco's* shackles upon public employers.

## I.

In *Waters,* a four-justice plurality held that the government could fire an employee for disruptive speech based on the government's reasonable belief of what the employee said, regardless of what was actually said. *See Waters,* 511 U.S. at ——, ——, 114 S.Ct. at 1887, 1889 (O'Connor, J., joined by Rehnquist, C.J., Souter and Ginsburg, JJ.). Here, however, there is no dispute as to what Jeffries actually said in the Albany speech. Accordingly, we need pursue only that part of *Waters* dealing with the disruptiveness of the speech.

The *Waters* plurality reiterated the test of *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), to determine when the First Amendment protects speech by a government employee:

> To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to the " 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' "

511 U.S. at ——, 114 S.Ct. at 1884 (quoting *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Ed. of Township High School Dist.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968))).

The plurality then explained that, in applying this test, the extent of the injury caused by the employee's speech need not be actual; rather, the government's burden is just to show that the speech threatened to interfere with government operations. *See id.*, 511 U.S. at ——, ——, 114 S.Ct. at 1887, 1890. It emphasized that greater deference must be given to the government when it acts as employer rather than as sovereign:

> [W]e have given substantial weight to government employers' *reasonable predictions of disruption, even when the speech involved is on a matter of public concern,* and even though when the government is acting as sovereign our review of legislative predictions of harm is considerably less deferential.
>
> . . . .
>
> [A] government employee, like any citizen, may have a strong, legitimate interest in speaking out on public matters. In many such situations the government may have to make a *substantial showing* that the speech is, in fact, *likely to be disruptive* before it may be punished.

*Id.* at ——, 114 S.Ct. at 1887 (emphasis added); *see also United States v. Treasury Employees Union,* —— U.S. ——, —— n. 21, 115 S.Ct. 1003, 1018 n. 21, 130 L.Ed.2d 964 (1995) (quoting *Waters* to reaffirm that deference is given to government's reasonable predictions of harm when used to justify the punishment of isolated incidents of employee speech).

■ We read the *Waters* plurality opinion to hold that the closer the employee's speech reflects on matters of public concern, the greater must be the employer's showing that the speech is likely to be disruptive before it may be punished. *See Treasury Employees Union,* —— U.S. at ——, 115 S.Ct. at 1021 (O'Connor, *J.,* concurring in part, dissenting in part) ("As the magnitude of intrusion on employees' interests rises, so does the Government's burden of justification."). There is, thus, a proportion between the nature of the speech and the nature of the sanction that may ensue. Nevertheless, even when the speech is squarely on public issues—and thus earns the greatest constitutional protection—*Waters* indicates that the government's burden is to make a substantial showing of *likely* interference and not an *actual* disruption. 511 U.S. at ——, 114 S.Ct. at 1887.

## II.

■ Whittled to its core, *Waters* permits a government employer to fire an employee for speaking on a matter of public concern if: (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech. *See Waters,* 511 U.S. at ——, —— - ——, 114 S.Ct. at 1887, 1889–91. By stressing that *actual* disruption is not required, *Waters* pulls a crucial support column out from under our earlier *Jeffries* opinion. We are now constrained to hold under *Waters* that the defendants did not violate Jeffries' free speech rights if: (1) it was reasonable for them to believe that the Albany speech would disrupt CUNY operations; (2) the potential interference with CUNY operations outweighed the First Amendment value of the Albany speech; and (3) they demoted Jeffries because they feared the ramifications for CUNY, or, at least, for reasons wholly unrelated to the Albany speech.

■ In the district court, the jury's central finding was that all 15 defendants were "motivated" to demote Jeffries by a "reasonable expectation" that the Albany speech would harm CUNY. This jury finding establishes that because the defendants were motivated by a reasonable prediction of disruption, they did not demote him for an improper retaliatory motive. Moreover, we hold that, as a matter of law, this potential disruptiveness was enough to outweigh whatever First Amendment value the Albany speech might have had. Under *Waters,* then, the jury's finding, if it stood alone, would suffice to show that none of the defendants violated Jeffries' free speech rights.

This finding does not stand alone, however. In response to later waves of interrogatories, the jury found that the six Harleston defendants (but—significantly—not the other nine)

demoted Jeffries because of the Albany speech, and that they would not have done so if Jeffries had not given the speech. The jury then decided that the six Harleston defendants "acted with malicious intent to violate the plaintiff's rights ... or with malicious intent to unlawfully injure him, or ... with a callous or reckless disregard of the plaintiff's First Amendment rights."

These later findings are tantamount to a determination that the six Harleston defendants demoted Jeffries in retaliation for his speech, and not to protect CUNY from the ramifications of his speech. *See Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 ("Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech.").

As we said in the original *Jeffries* opinion, we cannot harmonize the jury's earlier finding with the later ones. *See Jeffries,* 21 F.3d at 1250. If, as the first finding has it, all the defendants demoted Jeffries because they reasonably believed the speech would harm CUNY, the demotion was not retaliatory. If, as the later findings have it, six of the defendants acted against Jeffries out of malice or reckless disregard for his rights, those six were not motivated by a reasonable belief that the speech would harm CUNY. As to these six defendants, these findings are "hopelessly irreconcilable," *id.,* and would ordinarily require a remand for a new trial. *See Brooks v. Brattleboro Mem. Hosp.,* 958 F.2d 525, 529–30 (2d Cir.1992) (remand required where material jury responses cannot be read together rationally).

No retrial is needed here, however, because elementary principles of causation compel the conclusion that Jeffries' First Amendment rights were not violated. *See* 42 U.S.C. § 1983 (section 1983 relief only available if the plaintiff was deprived of federal rights). The jury found that at least nine of the defendants, a clear majority, limited Jeffries' term because they expected his speech would harm CUNY (and not for invidious motives), *and* that this expectation was reasonable.

There is, moreover, no reasonable possibility that the six Harleston defendants tainted the vote with whatever retaliatory motives they may have had. Three of the six Harleston defendants voted *against* the proposal to limit Jeffries' term to one year; two of them were not Trustees, and thus could not vote; and one abstained. While Harleston and Reynolds were instrumental in putting the one-term issue on the Board's agenda, *see id.* at 1247, and may indeed have done so to punish Jeffries, the nine votes based on legitimate grounds constitute a superseding cause breaking the causal chain between the tainted motives (of Harleston and Reynolds) and the decision to limit Jeffries' term. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir.1989) (superseding causes relieve defendants of section 1983 liability). And, to whatever extent any of the Harleston defendants inveighed against Jeffries and his speech at the Board meetings, the jury expressly found that these lamentations did not affect the nine Trustee defendants who based their votes on a reasonable expectation of harm. Thus, the motives of the Harleston defendants—whatever they were—did not cause a cognizable injury to Jeffries.

■ Finally, we note that an amicus curiae argues that we should not apply *Waters* at all because Jeffries, as a faculty member in a public university, deserves greater protection from state interference with his speech than did the nurse in *Waters* who complained about the obstetrics division of the hospital. We recognize that academic freedom is an important First Amendment concern. *See, e.g., Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967) ("The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools."). Jeffries' academic freedom, however, has not been infringed here. As we held in the earlier *Jeffries,* and as Jeffries himself has argued, the position of department chair at CUNY is ministerial, and provides no greater public contact than an ordinary professorship. *See Jeffries,* 21 F.3d at 1247. Jeffries is still a tenured professor at CUNY, and the defendants have not sought to silence him, or otherwise limit his access to the "market-

place of ideas" in the classroom. *See Keyishian*, 385 U.S. at 603, 87 S.Ct. at 683.

## CONCLUSION

Because the only defendants who voted in favor of limiting Jeffries' term did so constitutionally, and because the Harleston defendants did not contribute to the decision to limit Jeffries' term, we conclude that Jeffries has not suffered a deprivation of his constitutional rights.

We reverse the judgment of the district court, and remand with instructions to enter judgment for the defendants.

REVERSED and REMANDED with instructions to enter judgment for the defendants.