Charles B. TAYLOR, Plaintiff–Appellee,

v.

BRENTWOOD UNION FREE SCHOOL DISTRICT; Board of Education, Brentwood Union Free School District; Anthony Felico, in his capacity as a member of the Board of Education, Brentwood UFSD; Ruth Rosenthal, in her capacity as a member of the Board of Education, Brentwood UFSD; Steven Coleman, in his capacity as a member of the Board of Education, Brentwood UFSD; Frank Cannon, in his capacity as a member of the Board of Education, Brentwood UFSD; Mary Reid, in her capacity as a member of the Board of Education, Brentwood UFSD; Owen McCaffrey, in his capacity as a member of the Board of Education, Brentwood UFSD; Jaime Suarez, in his capacity as a member of the Board of Education, Brentwood UFSD; Frank Mauro, in his capacity as Superintendent of Schools, Brentwood UFSD; Rosemary Townley, Dr., in her capacity as a member of the Disciplinary Hearing Panel; Thomas Caramore, Dr., in his capacity as a member of the Disciplinary Hearing Panel, Defendants,

Anne Rooney, in her capacity as Acting Principal, South Middle School, Defendant–Appellant.

Docket No. 97–7481.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1997.

Decided May 6, 1998.

Harriet A. Gilliam, Aquebogue, NY, for Plaintiff–Appellee.

Robert J. Ciovacco, Certilman Balin Adler & Hyman, LLP, East Meadow, NY (Jeannine A. Broomhall, Neil H. Angel, of counsel), for Defendant–Appellant.

Before: MINER, PARKER and WOOD *, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Anne E. Rooney appeals from a money judgment entered in favor of plaintiff-appellee Charles B. Taylor in the United States District Court for the Eastern District of New York (Spatt, J.), following a jury trial. Taylor prevailed on his claim, brought pursuant to 42 U.S.C. § 1983, that his one-year suspension from teaching constituted race discrimination violative of his equal protection rights under the Fourteenth Amendment of the Constitution. At the time of his suspension, Taylor was a tenured teacher at Brentwood South Middle School ("South") in Brentwood, New York, where Rooney served as acting principal. Rooney advances the following contentions on appeal: (1) she was entitled to judgment as a matter of law because her actions were not the proximate cause of any injury sustained by Taylor; (2) she was entitled either to absolute immunity or qualified immunity from liability because she acted pursuant to her official duty to report complaints regarding the use of corporal punishment by teachers at her school; (3) the district court erred in submitting to the jury the issue of whether other school teachers and Taylor were similarly situated, since that issue was clear as a matter of law; (4) the principle of collateral estoppel prevented Taylor from relitigating, subsequent to the decision of the disciplinary hearing panel, the issue of whether he was treated differently from similarly situated Caucasian teachers; (5) the district court erroneously admitted evidence relating to certain allegedly discriminatory statements made by Rooney; (6) the court improperly instructed the jury, both in its charge as well as in its special interrogatories, that intent to inhibit Taylor's right of free speech could serve as the basis for his § 1983 claim when his First Amendment claim had already been dismissed; and (7) the court abused its discretion in calculating the attorney's fees award in this case.

For the reasons that follow, we reverse the judgment of the district court and remand with instructions to enter judgment for Rooney.

## BACKGROUND

Defendant-appellant Anne E. Rooney was appointed acting principal of South in September of 1987 and served in that capacity at all times relevant to this appeal. Plaintiff-appellee Charles B. Taylor, who is African–American, was employed as a teacher of technology and industrial arts at South since September of 1971. Taylor had a history of physical confrontations with students at South, beginning in 1976 and occurring throughout the administrations of three different South principals. Taylor's personnel file, for example, is replete with correspondence written by various administrators that describe the altercations, set forth Board of Education Policy 5131 [1] (the "Corporal Pun-

---

* The Honorable Harlington Wood, Jr., of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Board of Education Policy 5131 provides, in pertinent part, that:

. Corporal punishment is not an effective means of developing self-discipline. The [Brentwood Union Free School] District will not condone or accept the use of physical force (corporal

ishment Policy" or "Policy 5131") of the Brentwood Union Free School District (the "District"), and caution Taylor against violating such policy. The record indicates that Taylor had been reminded of the Corporal Punishment Policy repeatedly over a fifteen-year period and that he had received several reprimands regarding the manner in which he disciplined students. Taylor has denied in whole or in part each of the allegations of improper conduct.

Upon receipt of a complaint of either a parent or student, principals at each school within the District are required to report to Michael Fasullo, Director of Employee Relations and Planning in the District, any incidents that involve the use of physical force on a student by a teacher. Specifically, Fasullo testified that every year principals are reminded that whenever they receive a complaint from a student or parent regarding corporal punishment, they "are required to contact Central Administration." [2] Fasullo further testified that a principal typically will place a phone call to him regarding an incident and then follow up with written information. The decision of whether to report such an incident is not left to the discretion of the principals, and principals are not free merely to attempt to resolve the matter at the building level when a complaint has been made.

Fasullo used the information provided by the principals to prepare reports regarding the use of corporal punishment at schools throughout the District. Such reports must be submitted to the Commissioner of Education of the State of New York (the "Commissioner") on a semi-annual basis.[3] In addition to using the data supplied by local school authorities to prepare semiannual reports, District administrators used the information to determine whether to conduct an investigation into the incidents underlying the complaints.

The record indicates that Rooney fully complied with her duty to report complaints regarding the use of corporal punishment by teachers working in her school. For example, after receiving complaints that Taylor had used excessive force in disciplining students Rudy P.[4] and Alexis A., Rooney telephoned District administrators and subsequently sent them copies of her correspondence with Taylor relating to the events. For example, on May 23, 1989, Rooney sent a memorandum to Taylor recounting the incident involving Rudy P., which occurred on that day. A copy of this memo was sent to District officials Welch and Black. After the incident involving Alexis A., Rooney asked Assistant Principal Ithiel Lloyd to take photographs of the injured child's neck. Rooney testified that she sent the photographs either to Fasullo or to Michael T. Welch, the District's Director of Secondary Education.

Fasullo's report for the six-month period commencing on January 1, 1989 and ending

punishment) upon a pupil for the purpose of punishing that pupil.
Reasonable physical force used for the following purposes is not to be misconstrued as corporal punishment:
(1) to protect oneself form physical injury;
(2) to protect another pupil or teacher or any other person from physical injury;
(3) to protect the property of the school or of others;
(4) to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts.

2. Although not specifically defined by the parties in their briefs, the term "Central Administration" appears to refer to the various administrators who are employed by the District.

3. In every school district, the board of education or its equivalent is required to submit to the Commissioner the following:

a semiannual report ..., by January 15th and July 15th of each year ... setting forth the substance of each complaint about the use of corporal punishment received by local school authorities during the reporting period, the results of each investigation, and the action, if any, taken by the school authorities in each case.
N.Y. Comp.Codes R. & Regs. tit. 8, § 100.2(*l*)(3)(ii).

4. To protect the identities of the children involved, we follow the lead of the district court and do not use the full names of the various children. See *Taylor v. Brentwood Union Free School Dist.*, 908 F.Supp. 1165, 1170 (E.D.N.Y. 1995).

on June 30, 1989 states that there was an ongoing investigation into a complaint made on May 23, 1989. This complaint was made by the mother of Rudy P. and concerned the physical confrontation between Taylor and Rudy P. that occurred on May 8, 1989. Fasullo's report for the period of July 1, 1991 through December 31, 1991 notes a complaint made on December 5, 1991, concerning the incident between Taylor and Alexis A. that occurred on the same day.

In the cases of Rudy P. and Alexis A., District officials decided that further investigation was warranted. Accordingly, the District fully and independently investigated the events of May 8, 1989 and December 5, 1991. Fasullo was charged with conducting the investigations. He testified that his investigation of the incident involving Rudy P. was undertaken in three stages. First, he reviewed with members of South's administration the existing reports and documentation relating to the incident. Second, he met with Taylor and representatives from his union to obtain a review of the event from Taylor's perspective. Finally, Fasullo interviewed various students who witnessed the event. Fasullo's subsequent investigation of the incident involving Alexis A. proceeded in much the same way.

Taylor was provided an opportunity to present his own version of the incidents involving the two students. On June 28, 1989, a meeting was held at the District's offices that included a discussion of the incident involving Rudy P. Associate Superintendent Les Black, Fasullo, Welch, Taylor and Taylor's attorney, Joseph Fritz, attended the meeting. At a meeting held at the District's offices on December 11, 1991, the confrontation between Taylor and Alexis A. was discussed.

Subsequent to Fasullo's investigation of the incident involving Rudy P., Superintendent Mauro first decided not to take disciplinary action against Taylor. However, after Fasullo submitted a report and recommendation that detailed his investigation of the December 5th incident involving Alexis A. and recommended that charges be filed pursuant to N.Y. Educ. Law § 3020–a (McKinney 1993), the Superinten-

dent concluded that disciplinary charges should be preferred against Taylor in connection with both incidents. The record indicates that Rooney made no recommendation to District officials or anyone else regarding whether charges should be filed against Taylor. In fact, other than complying with her duty to report all complaints regarding the use of physical force on students, the record indicates that Rooney had absolutely no input into whether the Superintendent would seek discipline for Taylor. Rooney testified at trial that she neither requested nor recommended that charges be brought and that at no time was she consulted about the issue by District administrators. Taylor has presented no evidence to refute her testimony.

Even though the Superintendent decided to seek discipline for Taylor, charges could not be brought against the teacher without the approval of a majority of the seven-member Board of Education (the "Board"). Accordingly, a meeting of the members of the Board was scheduled, and the Board members were briefed by Associate Superintendent Black on the incidents in which Taylor was involved. After posing various questions to Black about the incidents, a majority of the members of the Board agreed that there was probable cause to conclude that Taylor had acted improperly. Accordingly, the Board approved the filing of three charges against Taylor.

The Superintendent filed the charges, pursuant to § 3020–a, on January 16, 1992 and sought Taylor's dismissal, the maximum penalty available. The charges included two charges of misconduct and conduct unbecoming a teacher, and a third charge of insubordination. The first charge alleged that Taylor had used excessive force in disciplining Rudy P., resulting in bruising of the student's arm and neck. The second charge alleged that Taylor had used excessive force in disciplining Alexis A., resulting in bruising of that student's neck. The third charge alleged that Taylor had disregarded prior oral and written directions from the administration at South regarding his improper use of physical force in disciplining students.

Pursuant to § 3020–a, Taylor requested a hearing before a three-member panel.

The disciplinary hearing panel convened for hearings on eight separate occasions between April and October of 1992. At the hearings, the District produced eight witnesses: students Santos S., Alexis A., Rudy P. and Anthony S., Assistant Principal Lloyd, Acting Principal Rooney, Associate Superintendent Black, and Director of Employee Relations and Planning Fasullo. Taylor produced six witnesses: Cartez Johnson, Joseph Basso and Nancy Vasquez, each a teacher at South, student Michael N., Black and Fasullo. Taylor also testified on his own behalf.

With respect to the second charge, Alexis A. testified about the events that occurred on December 5, 1991 after he began experiencing chest pains and then stood up near his desk in Taylor's classroom. The following is a summary of his testimony that appears in the decision of the disciplinary hearing panel:

> [Taylor] came over to him and told him to sit down and, in a hard manner touched his chest with one of his hands. Alexis told [Taylor] that he was hurting him and pushed [Taylor's] hand away with his own.... [Taylor then] grabbed the front of his sweater with both hands and threw his[sic] to the floor over his extended leg. [Taylor] then grabbed Alexis by the hand with both hands and pushed him against the wall. Alexis was wearing rosary beads around his neck at the time. He tried to grab [Taylor] by his tie.... Alexis [then proceeded] to the office of Assistant Principal Lloyd, where pictures were taken of his neck.

Santos S. was an eyewitness to the events that took place on December 5th. He corroborated Alexis' version of events. According to Santos, "Taylor told Alexis to sit down and when he refused to do so, Taylor put his hand on Alexis' shoulder. Alexis then pushed Taylor's hand away, upon which Taylor threw Alexis on the floor by grabbing him by the neck and throwing him over his leg." Lloyd testified that Alexis was emotionally upset when he and Santos arrived at Lloyd's office shortly after the altercation and that there were marks on Alexis' neck. Rooney testified that she also saw "welts" on Alexis'

neck after the incident in Taylor's classroom and that she directed Lloyd to photograph the child's neck. Additionally, she testified that she had referred Taylor to Policy 5131 on various occasions between 1987 and 1989 and that she had warned him that he was not to use excessive force against students.

Black testified that he had met with Taylor on a number of occasions in his current capacity as associate superintendent of schools and in his previous capacity as director of elementary education, each time warning Taylor not to use improper physical force on students. For example, Black stated that he had warned Taylor and his attorney, at the meeting held on June 28, 1989, that violations of the District's Corporal Punishment Policy might lead to the holding of a disciplinary proceeding.

With respect to the first charge, Rudy P. testified that Taylor had placed him in a headlock on May 8, 1989 and that, as a result of the incident, he had sustained scratches on his arm and a red mark on his neck. Rudy P. also testified that he had sustained a bruise on his head when Taylor pushed him into a classroom, causing him to bump his head on the frame of a door. Anthony S. testified that he saw Taylor holding Rudy P. in a headlock and observed redness on Rudy's forehead.

The panel dismissed the charges regarding the May 8th incident, having concluded that such charges had not been proven by a preponderance of the evidence. Conversely, the panel determined that the second charge, relating to the December 5th incident, had been proven by a preponderance of the evidence. Specifically, it found that Taylor had used excessive force in disciplining Alexis A. The panel considered significant the fact that Taylor denied that he had flipped Alexis A. over his leg during the December 5th incident, despite extensive testimony to the contrary. According to the written decision of the panel, "This fact was most compelling in light of the testimony of both the Board witnesses to the incident, and [Taylor's] own witness, Michael, who testified ... [that] Mr.

Taylor flipped [Alexis]."[5]

Accordingly, while it deemed the penalty of termination excessive, the panel voted in favor of a one-year suspension without pay. After a meeting held on December 19, 1993, the District implemented the decision of the disciplinary hearing panel. Taylor was suspended from January 22, 1993 through January 22, 1994. Taylor appealed the panel's decision, pursuant to N.Y. Educ. Law § 3020–a, to the Commissioner. In a comprehensive written decision, Commissioner Thomas Sobol dismissed Taylor's appeal, having concluded that there was no basis upon which to reverse the decision of the disciplinary hearing panel.

On January 17, 1995, Taylor filed a complaint in federal district court alleging, *inter alia,* that he was singled out for disciplinary action by the District, by the Board, by Anthony Felico, Ruth Rosenthal, Steven Coleman, Frank Cannon, Mary Reid, Owen McCaffrey, Jaime Suarez, individual members of the Board, by Superintendent Mauro, by Drs. Rosemary Townley and Thomas Caramore, individual members of the disciplinary hearing panel, and by Rooney because of his race and open criticism of their treatment of minority teachers. *See Taylor v. Brentwood Union Free School Dist.,* 908 F.Supp. 1165, 1169 (E.D.N.Y.1995). Plaintiff sued under 42 U.S.C. §§ 1983 and 1985(3), alleging that his equal protection rights under the Fourteenth Amendment and his free speech rights under the First Amendment had been violated as a result of his suspension, and that his suspension was illegal under N.Y. Exec. Law § 290 *et seq.,* because it occurred on account of his race.

Prior to trial, the court ruled on two motions to dismiss. *See id.* at 1172. The first motion was made by defendants Caramore and Townley, the two members of the disciplinary hearing panel who voted in favor of disciplinary action. *See id.* Caramore and Townley argued, *inter alia,* that they were shielded from liability on the ground of absolute immunity. *See id.* The district court agreed and dismissed the complaint against these two defendants. *See id.* at 1175. The remaining defendants moved to dismiss the state law claims and the constitutional claims, pursuant to Fed.R.Civ.P. 12(b)(6). *See id.* at 1172. The district court dismissed the state law claims, having concluded that they were time barred, but declined to dismiss the constitutional claims. *See id.* at 1176–77.

The case went to trial before Judge Spatt on October 15, 1996. At the close of the plaintiff's case, the defendants moved, pursuant to Fed.R.Civ.P. 50(a), for dismissal of each of the claims alleging violations of Taylor's constitutional rights. The court dismissed the First Amendment claims on the ground that speech of public concern was not demonstrated. The court reserved decision on the motion to dismiss the equal protection claims. Ultimately, the sole issue presented to the jury was whether Taylor was treated differently from various Caucasian teachers who were similarly situated.

On November 7, 1996, the jury returned a verdict in favor of the plaintiff only against Rooney. The verdict, rendered in answers to special interrogatories, awarded Taylor $67,412.00 for back-pay, $5,143.80 for loss of medical insurance benefits, and $61,249.60 for loss of pension benefits. Following the return of the verdict, defendant-appellant renewed her motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b). After reviewing the standard for granting or denying a motion for judgment as a matter of law, the district court denied such motion. The plaintiff then moved for attorney's fees and costs, pursuant to 42 U.S.C. § 1988. Counsel for Rooney opposed the fees and costs requested. By oral ruling during a telephonic conference held on January 24, 1997, the district court awarded the plaintiff $54,022.70 in fees and costs.

By orders dated March 13 and 17, 1997, the district court ordered that judgment be entered against Rooney in the amount of $187,828.10 and that the complaint be dis-

---

**5.** The written decision of the panel did not contain any disposition of the insubordination

charge.

missed against all remaining defendants. This appeal followed.

## DISCUSSION

Rooney raises seven issues on this appeal. First, she asserts that she was entitled to judgment as a matter of law because the independent actions of various officials of the District, various members of the Board, various members of the disciplinary hearing panel and the Commissioner caused Taylor's suspension and, accordingly, prevented Rooney's actions from being the proximate cause of any injury to Taylor. Second, Rooney argues that she was entitled either to absolute immunity or qualified immunity from liability for acting pursuant to her official duty to report complaints regarding the use of corporal punishment by teachers at her school. Third, she contends that the district court erred in submitting to the jury the issue of whether other school teachers and Taylor were similarly situated since that issue was clear as a matter of law. Fourth, Rooney asserts that the principle of collateral estoppel prevented Taylor from relitigating, subsequent to the decision of the disciplinary hearing panel, the issue of whether he was treated differently from similarly situated Caucasian teachers. Fifth, Rooney argues that the district court erroneously admitted evidence relating to certain allegedly discriminatory statements made by Rooney.[6] Sixth, she contends that the district court improperly instructed the jury, both in its charge as well as in its special interrogatories, that intent to inhibit Taylor's right of free speech could serve as the basis for his § 1983 claim when his First Amendment claim had already been dismissed. Finally, she argues that the court abused its discretion in calculating the attorney's fees award in this case. Because we conclude that the district court's judgment must be reversed on the first ground, we do not address Rooney's remaining contentions.

*I. Standard for Deciding a Motion for Judgment as a Matter of Law*

 The standard governing motions for judgment as a matter of law ("JMOL") pursuant to Fed.R.Civ.P. 50, formerly denominated motions for directed verdict or motions notwithstanding the verdict, *see generally Ahern v. County of Nassau*, 118 F.3d 118, 120 n. 1 (2d Cir.1997); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir. 1993), is well established. JMOL may not properly be granted unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in that party's favor. *See, e.g., Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1039 (2d Cir.1992). In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence. *See Vasbinder v. Ambach*, 926 F.2d 1333, 1339–40 (2d Cir.1991). Thus, judgment as a matter of law should not be granted unless

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise [or] conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Ahern*, 118 F.3d at 120 (quoting *Bonura v. Chase Manhattan Bank, N.A.*, 795 F.2d 276, 277 (2d Cir.1986)(per curiam)). The same standards govern the court of appeals in its review of a district court's decision denying a motion for JMOL. *See id.* Within this framework, we consider the propriety of JMOL in light of the substantive law and the evidence in this case.

---

6. Taylor presented the testimony of Elizabeth A. Phipps, a probationary teacher at South, who was denied tenure during Rooney's administration. Phipps, a Caucasian woman married to an African–American man, testified to several statements made by Rooney, which Taylor argued were indicative of racial animus on the part of Rooney. For example, Phipps testified as fol-

lows: "There was one incident when I was rushing to get my paycheck in the main office and I got it and I went, oh, wow. And she said to me, well, it beats the bread line, doesn't it?" Additionally, Phipps testified that Rooney made the following comment in response to Phipps' statement that she was having a "bad hair day": "[Y]ou have black, dark roots, don't you?"

## II. *Causation*

█ Section 1983 provides the basis for Taylor's race discrimination claim against Rooney.[7] To prevail on such a claim, section 1983 requires that the plaintiff prove, *inter alia*, that the defendant caused the deprivation of his or her rights. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). "The causation requirement of § 1983 is a matter of statutory interpretation rather than of common tort law." *City of Springfield v. Kibbe*, 480 U.S. 257, 269, 107 S.Ct. 1114, 1120–21, 94 L.Ed.2d 293 (1987)(per curiam)(quotation omitted). The Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct. *See, e.g., Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). For example, in *Martinez*, the Court refused to hold parole officials liable for the death of a fifteen-year-old girl who was murdered by a parolee five months after his parole. *See id.* The Court stated:

> [W]e do hold that at least under the circumstances of this parole decision, [the girl's] death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as a species of tort liability, ... it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

*Id.* (quotation and citation omitted).

█ In the present case, Rooney argues that she cannot be held liable because she did not proximately cause Taylor's suspension. Specifically, she argues that (1) Taylor was suspended based upon the independent investigations and findings of Fasullo and other District officials, the decision of the Board to prefer charges against Taylor, the decision of the disciplinary hearing panel that Taylor should be suspended for one year without pay and the Commissioner's rejection of Taylor's appeal from the panel's decision; and (2) that these intervening acts break the causal connection between Rooney's reporting of various incidents involving Taylor to the District and the decision to suspend Taylor. We agree. Accordingly, we must reverse the denial of JMOL.

Our decision in *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.1995), controls the outcome of this case. In that case, we held that although the actions of certain defendants were unconstitutional, liability under § 1983 did not attach because such actions could not be considered the cause of any injury sustained by the plaintiff.

Leonard Jeffries, the chairman of the Black Studies Department at City College of New York ("City College"), which is part of the City University of New York ("CUNY"), sued City College President Bernard Harleston, CUNY Chancellor Ann Reynolds and fourteen CUNY trustees under § 1983, alleging violations of his First Amendment rights. *Jeffries*, 52 F.3d at 10–11. The suit arose out of the decision of the CUNY Board of Trustees to limit Jeffries' term as department chairman to one year, even though such terms typically last three years, because of a controversial speech Jeffries gave addressing the bias of New York State's public school system and the history of black oppression. In the course of such speech, Jeffries made several anti-Semitic remarks.

After the speech, Harleston and Reynolds arranged for the CUNY Board of Trustees to vote as to whether to limit Jeffries' term as department chair. Nine of the fourteen Trustees voted to limit Jeffries' term to a year, four voted to remove him immediately and one abstained from the vote because she had made derogatory comments about Jeffries in the past. Harleston and Reynolds did not vote because they were not Trustees.

---

7. 42 U.S.C. § 1983 provides, in pertinent part, that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Jeffries sued all fourteen of the Trustees as well as Harleston and Reynolds. However, suit against one of the trustees was dropped when she died during the course of the trial, leaving fifteen defendants. The jury found that only six defendants took action against Jeffries because of his speech, and would not have done so had Jeffries not given the speech (Harleston, Reynolds and four of the living Trustees)(collectively, the "Harleston defendants").

Based upon the teachings of the Supreme Court in *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), we held that despite the fact that six out of nine defendants took action in connection with Jeffries' demotion because of the speech and despite the fact that the jury decided that those "six defendants 'acted with the malicious intent to violate the plaintiff's rights ... or with malicious intent to unlawfully injure him, or ... with a callous or reckless disregard of the plaintiff's First Amendment rights,' " *Jeffries,* 52 F.3d at 14, the actions of these defendants were not the cause of the plaintiff's injury. We stated:

[E]lementary principles of causation compel the conclusion that Jeffries' First Amendment rights were not violated.... The jury found that at least nine of the defendants, a clear majority, limited Jeffries' term because they expected his speech would harm CUNY (and not for invidious motives), *and* that this expectation was reasonable.... While Harleston and Reynolds were instrumental in putting the one-term issue on the Board's agenda, ... and may indeed have done so to punish Jeffries, the nine votes based on legitimate grounds constitute a superseding cause breaking the causal chain between the tainted motives of Harleston and Reynolds and the decision to limit Jeffries' term.

*Id.* Accordingly, we held that there was no § 1983 liability in that case. *See id.* ("[T]he motives of the Harleston defendants— whatever they were—did not cause a cognizable injury to Jeffries.").

The situation of Rooney in the present case is indistinguishable from that of the Harleston defendants in all material respects. Specifically, we believe that the independent investigations of the incidents involving Rudy P. and Alexis A. and the other events culminating in the decision of the disciplinary hearing panel to suspend Taylor constitute a superseding cause of Rooney's injury, breaking the causal link between any racial animus Rooney may have had and the suspension. Because we conclude that no reasonable jury could find Rooney's actions to be the cause of Taylor's injury, we need not remand for a new trial. *See id.* (holding that no retrial is needed where elementary principles of causation compel the conclusion that plaintiff's rights were not violated).

Based on the record before us, there is no basis for concluding that any ill motives Rooney may have had impacted the decision to suspend Taylor. Based on the District's requirement that principals report all complaints regarding the use of corporal punishment in their schools, Rooney contacted District officials regarding the incidents involving Rudy P. and Alexis A. She also made some preliminary inquiries and obtained photographs of injuries sustained by Alexis A. Thereafter, District officials decided to conduct a more formal investigation into the matters and Rooney took no part in this decision. Fasullo was charged with the responsibility for the conduct of the District's investigation. The Board later approved the filing of disciplinary charges based upon its own conclusion that there was probable cause to conclude that Taylor had violated Policy 5131 and was guilty of insubordination. Rooney also took no part in the decision to charge Taylor and had no control over the ultimate disposition of the charges. The disciplinary panel, acting pursuant to § 3020–a, concluded that there was a violation of the Corporal Punishment Policy in connection with the incident involving Alexis A. That panel deemed the appropriate punishment to be a one-year suspension without pay. Finally, the Commissioner dismissed Taylor's appeal, having concluded that there existed no basis for a reversal.

In examining the facts of this case, we find no basis to conclude that this case is distinguishable from *Jeffries.* Just as the Harleston Defendants could not be held liable in *Jeffries,* where a majority of Trustees voted to limit Jeffries' term for legitimate reasons, Rooney cannot be held liable where a majority of the disciplinary hearing panel voted, based on the evidence before it, to suspend Taylor for one year without pay.

Although not cited by the parties in their briefs, we note that we have held in *Warner v. Orange County Dept. of Probation*, that a defendant may be held liable for "those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." 115 F.3d 1068, 1071 (2d Cir.1997)(quotation omitted). Specifically, we concluded in that case that a probation department could be held liable under § 1983 for violating the First Amendment's Establishment Clause where (1) the probation department's presentence report recommended to a sentencing judge that the plaintiff be required to attend Alcoholics Anonymous ("AA")—a program containing a religious component—at the discretion of the plaintiff's probation officer; (2) the sentence imposed by the judge contained this special condition; and (3) the assigned probation officer exercised the discretion granted to him and directed the plaintiff to attend AA meetings. Because the decision of the sentencing judge to impose the special condition was reasonably foreseeable, we rejected the contention that the decision imposing the condition was a superseding cause of the alleged constitutional injury. We therefore concluded that liability could attach to the probation department. However, we believe that the present case is distinguishable from *Warner* in two material respects. First, in *Warner*, although the probation department need not have recommended a specific program to the sentencing judge, it affirmatively recommended the AA program. Instead of merely recommending that an alcohol treatment program be considered, the probation department made a discretionary decision to recommend a particular program, the attendance at which ultimately caused the alleged constitutional injury. Second, it was not until the probation officer ordered that Warner attend the meetings that the injury occurred. The judge did not order Warner's attendance, but left the decision to the probation officer. In the present case, Rooney did not recommend that District officials prefer charges against Taylor; rather, she merely reported the filing of complaints relating to the incidents involving Rudy P. and Alexis A. in accordance with the instructions of District administrators, who were required to comply with N.Y. Comp.Codes R. & Regs. tit. 8, § 100.2(*l*)(3)(ii). She did not exercise any discretionary authority, nor was discretionary authority conferred upon her, as was the case in *Warner*. Moreover, unlike the situation in *Warner*, the injury sustained by Taylor occurred immediately upon the implementation of the disciplinary hearing panel's suspension decision, not after some positive action taken by Rooney. Neither the formal investigation nor the disciplinary hearing nor the sanctions were reasonably foreseeable to Rooney. All were independent causes that superseded Rooney's reports in causing any injuries that Taylor may have sustained.

Because no reasonable factfinder could conclude that Rooney was the cause of any constitutional harm or injury to Taylor, Taylor cannot prevail in this § 1983 action.

## CONCLUSION

In accordance with the foregoing, we reverse the judgment of the district court and remand with instructions to enter judgment for Rooney.